STATE of Iowa, Appellee,

v.

Robert Anthony POST, Appellant.

No. 62793.

Supreme Court of Iowa.

Dec. 19, 1979.

Rehearing Denied Jan. 21, 1980.

Robert H. Laden of Hyland, Laden & Pearson, P.C., Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Richard L. Cleland, Asst. Atty. Gen., and Dan L. Johnston, Polk County Atty., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, McCORMICK, ALLBEE, and LARSON, JJ.

LARSON, Justice.

This defendant was convicted of theft in the second degree for possession of stolen property in violation of section 714.1(4), Code Supp.1977. He appeals from that conviction alleging trial court error in (1) overruling his motion to suppress evidence seized under a search warrant, (2) instructing the jury that it could aggregate the value of all the stolen property found under his control to determine the degree of the offense, (3) refusing to give a requested instruction that jurors must not disclose the contents of their notes to other jurors, (4) instructing the jury that it could infer defendant knew or believed the property had been stolen from the fact that the property was previously stolen from two or more persons at different times, and (5) considering certain factors in determining the sentence to be imposed. We affirm the trial court.

I. *Motion to suppress.* The defendant's motion to suppress was based on alleged invalidity of a search warrant. He attacked its validity on two grounds. First, he argued that the facts alleged in the affidavit presented to the magistrate were insufficient as a matter of law to constitute probable cause. Second, he argued that material statements contained in the affidavit were knowingly false because they were subsequently denied by the persons to whom those statements were attributed. The trial court found no intentional or material misrepresentation and concluded probable cause had been established for issuance of the search warrant.

The search warrant affidavit was presented by police officer Richard Griglione and contained statements attributable to three other persons. The first was Steve Green, who had been arrested in a neighboring county while involved in a burglary. After about four weeks in custody and several interrogations, he indicated that the defendant was his "fence." The affidavit asserted that Green had committed 27 burglaries in Polk County, that he had sold much of the stolen property to defendant Post at 25¢ on the dollar, that he had received approximately $400 from such sales, that Post had provided him with a car to use while committing some burglaries, and that after each burglary he committed while using Post's car he sold the merchandise to Post. Griglione asserted that Green's information appeared to be reliable because it was derived from personal observation, contact and conversation with Post, because Green had made admissions against his interests, because a search of Green's residence revealed stolen merchandise, and because Green had directed officers to houses which he had robbed. He indicated that Green had learned of these facts between the summer of 1977 and February 1978. The affidavit also contained statements at-

tributable to Craig Wright. According to the affidavit, Wright had been employed by Post as a mechanic as recently as December 1977 and had observed numerous persons bringing merchandise into the rear door of Post's auto shop; this property was placed in an enclosed area by Post; Wright had helped transport some of the merchandise, including two television sets, to the basement of Post's home; and the basement was filled with merchandise and looked "like a Stereo Town warehouse." Griglione stated that Wright's information appeared to be reliable because it was derived from personal observation, contact and conversation with Post. He indicated that Wright had learned of the facts in December of 1977. The third person whose statements were included in the affidavit was Wanda Cook. The affidavit stated she was a friend of Steve Green, that she had driven the car on at least two occasions when Green was burglarizing houses, and that she corroborated Green's story that Post provided cars to be used for the burglaries and that the stolen merchandise was sold to Post. Griglione thought her information was reliable because it was derived from personal observation, contact and conversation with Post, because she had made admissions against her penal interests, and because she was identified by a mail carrier who had observed her in a car at a place which Green had burglarized.

■ Since the defendant's contention is that he was the subject of an unconstitutional search and seizure, the scope of our review is de novo. "In such situations we make an independent evaluation of the totality of the circumstances." *State v. Iowa District Court in and for Johnson County*, 247 N.W.2d 241, 245 (Iowa 1976).

The appellant continues on appeal to challenge the sufficiency of the affidavit to establish probable cause, relying on Craig Wright's lack of knowledge that the merchandise transported to the defendant's house was stolen, insufficient evidence in the affidavit for crediting the informants' testimony, and the remoteness of the statements attributable to Wright and Wanda

Cook. He also argues that the trial court erred by considering rebuttal evidence offered at the suppression hearing which had not been before the issuing magistrate.

■ In determining whether there is probable cause to issue a search warrant, the test is "whether a person of reasonable prudence would believe a crime was being committed on the premises to be searched or evidence of a crime was being concealed there." *Ibid.* at 248 (quoting *State v. Bean*, 239 N.W.2d 556, 559–60 (Iowa 1976)). The facts must establish probable cause that the crime or evidence is presently being committed or concealed at the place to be searched and cannot merely establish that there was probable cause at some time in the past. *Sgro v. United States*, 287 U.S. 206, 210–11, 53 S.Ct. 138, 140, 77 L.Ed. 260, 263 (1932).

■ When the supporting affidavit includes hearsay, certain requirements are imposed to ensure the trustworthiness of the information. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), requires that the magistrate be advised of (a) some of the underlying circumstances from which the informant reached his conclusion and (b) some of the underlying circumstances from which the officer concluded that the informant was reliable. "Otherwise, 'the inferences from the facts which lead to the complaint' will be drawn not 'by a neutral and detached magistrate,' as the Constitution requires, but instead, by a police officer 'engaged in the often competitive enterprise of ferreting out crime,' or, as in this case, by an unidentified informant." *Aguilar*, 378 U.S. at 114–15, 84 S.Ct. at 1514, 12 L.Ed.2d at 729 (citations omitted). Since the *Aguilar* test is directed only at ensuring the trustworthiness of the informant's information, it can be replaced in appropriate situations by the test of *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The *Spinelli* test is whether the tip "describe[s] the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an

accusation based merely on an individual's general reputation." 393 U.S. at 416, 89 S.Ct. at 589, 21 L.Ed.2d at 644.

 The information clearly meets the threshold requirement of establishing probable cause to believe a crime was being committed and evidence of it would be found on the defendant's property. It also passes the first prong of the *Aguilar* test. While the affidavit did not set out the circumstances surrounding each individual transaction between Green and the defendant, it set out more than mere conclusions. It described Green's continuous criminal activities, Post's participation in those activities by providing vehicles, and the fact that the activities always culminated in the sale of the stolen goods by Green to Post. Post argues that even if this information established probable cause for a search of his business, there was no evidence which supported such a finding for a search of his home. The basis of this argument is Craig Wright's disavowal of knowledge that the merchandise he transferred from the defendant's business to his residence was stolen. It is true that an otherwise insufficient affidavit cannot be bolstered by a showing of innocent activity, *State v. Easter*, 241 N.W.2d 885, 887 (Iowa 1976) and that the transference of this merchandise was apparently such an innocent activity. However, we are not dealing with an inadequate warrant application. The application is sufficient for a finding of probable cause that Post was involved in a fencing operation. Having established this, the showing of the "innocent activity" of transferring this kind of merchandise from Post's business to his home and the extent of the merchandise stored there is sufficient to establish probable cause that there would be evidence of the fencing operation at the home.

 The information also is sufficient to meet the second prong of the *Aguilar* test: The reviewing magistrate could have determined that the informants were reliable. This court has noted that in determining the reliability of informants a distinction must be made between "citizen informants" and "paid informants." *State v. Drake*, 224 N.W.2d 476, 478 (Iowa 1974). The reliability of a citizen informant may be shown "by the very nature of the circumstances under which the incriminating information became known." *Ibid.* In this case Craig Wright is a citizen informant. His information needs no greater showing of reliability. Green, on the other hand, was incarcerated on a charge of burglary at the time he provided information to the police. Because such information could have been exchanged for promises of leniency, he should be considered a paid informant. *Ibid.* However, he did more than merely indicate Post was running a fencing operation. He also admitted having committed many burglaries in Polk County. This court has recognized that admissions against penal interests provide a basis for establishing the reliability of an informant. *State v. Moehlis*, 250 N.W.2d 42, 45 (Iowa 1977). Appellant argues that an admission against penal interests is insufficient to establish reliability unless that admission involves the same criminal activity as that attributed by the informant to the other person. However, there is nothing in the underlying rationale of the rule to support this view, and we reject it.

 The United States Supreme Court has indicated that questions of remoteness are "determined by the circumstances of each case." *Sgro*, 287 U.S. at 210–11, 53 S.Ct. at 140, 77 L.Ed. at 263. Green was arrested on February 2, 1978, while burglarizing a home in a neighboring county. During the course of the next few weeks, he was interviewed several times by Polk County authorities. Finally, he gave them information about his criminal activities in Polk County between the summer of 1977 and his arrest. The police made further investigations and determined that as recently as December of 1977 Craig Wright had helped transport some of the stolen merchandise from the defendant's place of business to his residence. They also apparently learned from Wanda Cook that in late January and early February she had accompanied Steve Green on his house prowls.

The affidavit erroneously indicated that she had obtained that information in February 1977, a year earlier; Post argues that it can therefore not be considered. The State counters that since applications for search warrants are to be read in a common-sense manner, the court should take notice of the fact that this was merely a typographical error. We conclude that this defect is not material, but that in any event the affidavit was sufficient even without Wanda Cook's information. The application for a search warrant was submitted on March 3, 1978. Green's last transaction with the defendant was therefore over thirty days earlier, and Wright's involvement in transporting the stolen goods had occurred nearly ninety days previously.

 This court has noted that "time is not alone determinative . . . ." *Rockhold*, 243 N.W.2d at 850. In *Bastida v. Henderson*, 487 F.2d 860 (5th Cir. 1973), the court said:

> In general, the basic criterion as to the duration of probable cause is the inherent nature of the crime. The Circuits hold that where an affidavit recites a merely isolated violation then it is not unreasonable to believe that probable cause quickly dwindles with the passage of time. On the other hand, if an affidavit recites activity indicating protracted or continuous conduct, time is of less significance.

We noted *Bastida* when we adopted the rule that "a reasonable time lapse does not preclude issuance of a search warrant where a continuing illegal activity is adequately portrayed to the magistrate." *State v. Birkestrand*, 239 N.W.2d 353, 359 (Iowa 1976). Where "[t]he record shows 'an accumulation' of evidence, not likely to disappear . . . there seems to be greater likelihood the stolen property sought could still be found" despite the remoteness of the information. *State v. Bean*, 239 N.W.2d 556, 559 (Iowa 1976). Under such circumstances delay does not preclude a finding of probable cause because "[t]he test is one of *probability* and not certainty." *Ibid.* at 560 (emphasis added). Where one informant has indicated that the defendant was in-

volved in a fencing operation for over seven months and another informant has indicated that within the past three months he transported merchandise from the defendant's business to his residence, a reasonable person could determine that a search of both the business and residence would probably reveal evidence of the defendant's criminal activity. Since there was probable cause to issue the search warrant, we hold the trial court did not err in overruling appellant's motion to suppress on that ground.

 Post argues that once a prima facie showing of intentional false statements is made, the warrant should be invalidated without allowing the State to present rebuttal testimony to establish their truthfulness, because this would permit the district court to consider evidence which had not been presented to the issuing magistrate. The appellant correctly notes that when a defendant challenges the existence of probable cause for the issuance of a warrant, the State is limited in its support to the evidence actually presented to the magistrate. *State v. Rockhold*, 243 N.W.2d 846, 848–49 (Iowa 1976). The question of whether rebuttal evidence is permitted when the defendant challenges the truthfulness of the supporting affidavit has apparently never been addressed by this court. However, cases considering the falsity issue presuppose that there would be a factual hearing at which both the defendant and the State would present evidence. The seminal Iowa case on this subject is *State v. Boyd*, 224 N.W.2d 609 (Iowa 1974). *Boyd* discussed the showing required to be made by a defendant before a hearing will be held on the issue of false statements. The court

> adopt[ed] a rule *permitting a defendant to inquire into* the truth of the representations upon which a search warrant has been issued only upon a preliminary showing under oath that an agent or representative of the state has: (1) intentionally made false or untrue statements or otherwise practiced fraud upon the magistrate; or (2) that a material state-

ment made by such agent or representative is false, whether intentional or not.

If defendant *proves* either of the above *by a preponderance of the evidence,* the search warrant shall be invalidated and the evidence seized thereunder shall be inadmissible.

*Ibid.* at 616 (emphasis added). This indicates that a prima facie showing merely entitles a defendant to a hearing on the issue. Such a hearing necessarily involves a presentation of evidence by both defendant and the State. This was the procedure employed in *Iowa District Court in and for Johnson County. See* 247 N.W.2d at 245. We hold that the trial court did not err in allowing the State to present rebuttal testimony. When all the evidence presented at the hearing is considered, we conclude that the defendant has failed to meet his burden under the *Boyd* criteria.

■ II. *Aggregation of value.* The defendant argues that it was improper for the trial court to allow the jury to aggregate the value of all the property found under his control in determining the degree of the crime committed without a showing that the theft was by a series of acts attributable to a single scheme, plan or conspiracy. The basis for his argument is that the definition of value in section 714.3, The Code 1979, makes such a showing a prerequisite to aggregation. That section provides:

> The value of property is its normal market or exchange value within the community at the time it is stolen. If money or property is stolen by a series of acts from the same person or location, or from different persons by a series of acts which occur in approximately the same location or time period so that the thefts are attributable to a single scheme, plan or conspiracy, such acts may be considered a single theft and the value may be the total value of all the property stolen.

There have been no cases interpreting this section under the new code. However, we conclude that the second sentence of this provision has no application to the crime of receiving stolen property. With the code revision, all theft crimes were consolidated into chapter 714. The former crime of receiving stolen property is included under the definition of theft in section 714.1:

> A person commits theft when the person does any of the following:
>
> . . . . .
>
> (4) Exercises control over stolen property, knowing such property to have been stolen, or having reasonable cause to believe such property has been stolen, unless the person's purpose is to promptly restore it to the owner or to deliver it to an appropriate public officer.

The degrees of theft are set out in section 714.2, based upon the value of the property. At the time of arrest, a person charged under section 714.1(4) is exercising control over all that property which is in his or her possession, and the total value of that property should be used to determine the degree of guilt.

■ III. *Jurors' notes.* The defendant requested an instruction to the jury which would have forbidden communication of the contents of each juror's notes to the other jurors. He argues by analogy to the rule against allowing depositions to be taken into the jury deliberations. *See* R.Crim.P. 18(5)(e). The basis of that rule is that "[a] deposition, if constantly available for reference by the jury, could assume a disproportionate importance in relation to other trial testimony for which the jurors were required to call upon recollections only." *State v. Baumann,* 236 N.W.2d 361, 366 (Iowa 1975). Post argues that the written nature of the jurors' notes could cause them to assume disproportionate importance. He cites no cases in support of his position. The State, on the other hand, points out that Uniform Rule of Criminal Procedure 513(e), provides that "notes may be disclosed only to fellow jurors during deliberations." Also, standard 15–4.2, *ABA Standards Relating to the Administration of Criminal Justice* (tentative draft), Note Taking by Jurors (2d ed. 1978) provides that "notes should be treated as confidential between the juror making them and the other

jurors." We do not agree with appellant's assessment of the danger of such disclosures and hold the requested instruction was properly denied.

IV. *Inference of knowledge that goods were stolen.* Section 714.1(4) provides:

> The fact that the person is found in possession of property which has been stolen from two or more persons on separate occasions, or that the person is a dealer or other person familiar with the value of such property and has acquired it for a consideration which is far below its reasonable value, shall be evidence from which the court or jury may infer that the person knew or believed that the property had been stolen.

The trial court submitted the following instruction to the jury:

> If you find the State has proved by evidence beyond a reasonable doubt each of the following facts, then you may, but are not required to, infer that the defendant knew or believed that the property had been stolen:
>
> 1. That the property found in the possession of the defendant was stolen property.
>
> 2. That the property was previously stolen from two or more persons at different times.

The defendant argues that the allowance of such an inference violates due process.

■ Since this instruction clearly conveys to the jury the notion of permissiveness in the application of this inference, we are not presented with a presumption in violation of *Sandstrom v. Montana*, —— U.S. ——, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Rather, this case is controlled by *County Court of Ulster Co., New York v. Allen*, —— U.S. ——, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). If there "is a 'rational connection' between the basic facts that the prosecution proved and the ultimate fact presumed, and the latter is 'more likely than not to flow from' the former," then the inference meets the due process standards. *Ibid.* at ——, 99 S.Ct. at 2228, 60 L.Ed.2d at 797. The factors considered in making this determination are "history,

common sense, and experience." *Ibid.* at ——, 99 S.Ct. at 2232, 60 L.Ed.2d at 801 (citing *Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973)).

The inference has long been drawn that exclusive possession of recently stolen property, if unexplained or falsely explained, indicates that the defendant received it with guilty knowledge, *i. e.*, knowing that it was stolen. W. LaFave and A. Scott, *Handbook on Criminal Law* § 93, at 686–87 (1972). Other inferences of guilty knowledge are properly drawn from the fact the buyer paid an inadequate price for the goods, that the transaction was secret, and that the defendant knowingly received other stolen property from the same thief at nearly the same time as receipt of the stolen property in question. *Ibid.* Of these inferences Iowa has for a long time employed the one that possession of recently stolen property permits the jury to infer the property was received with guilty knowledge. *See State v. O'Kelly*, 211 N.W.2d 589 (Iowa 1973); *State v. Houston*, 211 N.W.2d 598 (Iowa 1973). The court has apparently never passed on the constitutionality of that inference. However, in *State v. Thornburgh*, 220 N.W.2d 579 (Iowa 1974), the court considered and found constitutional the inference from unexplained possession of recently stolen property that the possessor stole the property. The underlying rationale of both inferences is that due to the time element involved the possessor must have had either some involvement in or knowledge of the theft. This is a matter of common sense and is clearly rational.

■ The inference in question here is based upon the fact that the property was stolen from two or more persons on separate occasions. There is a rational connection between the fact that the property was stolen from separate sources and the inferred fact that the person in possession of them was more than a casual buyer of such goods and was, in fact, in the business of doing so. The inference instruction satisfies the *Allen* test for due process. The weight of that inference must be determined by the jury. The trial court was correct in submitting it.

V. *Sentencing considerations.* The defendant alleges that the court considered two impermissible matters in determining his sentence. The first was the defendant's involvement in a federal criminal case arising from acts occurring in 1976. The second was the trial court's reference to an alleged incident involving threats made by the defendant to a witness in the trial of the instant case. He also argues that the trial court placed too great a weight on the value of general deterrence by imposing a severe penalty and too little weight on the value of specific deterrence and rehabilitation through closely supervised probation. The trial court properly considered all of these matters.

The federal criminal matter arose out of a case of dealing with a stolen auto. The colloquy during sentencing indicated that the defendant was acquitted on that charge, but not because of defendant's noninvolvement in the incident. The owner had paid people to take the car in order to collect on the insurance. Since the car had not actually been stolen, the defendant was found not guilty of the crime charged. However, it indicates his activity in dealing with stolen merchandise. It was therefore relevant in the trial court's determination of proper sentence. We have recently held that a sentencing court may properly consider a defendant's involvement in criminal activity despite the fact that application of the exclusionary rule resulted in no actual conviction. *State v. Swartz,* 278 N.W.2d 22 (Iowa 1979). The policy considerations underlying the exclusionary rule are not present here; there is therefore even less reason to prohibit consideration of such conduct in this case than there was in *Swartz.*

The defendant attacks the trial court's consideration of the threat on the ground that it is "based upon rumor, speculation or conjecture." The defendant denied under oath that he had ever made such a threat; however, the witness testified under oath that he had. Under these circumstances a trial court could determine that the threat had occurred. Such a threat should clearly be considered by the trial court in determining the proper sentence to impose.

Finally, the court's consideration of the general deterrent effect of the sentence was proper. Seriousness of a crime is clearly a permissible factor to be considered by the judge in determining the sentence to be imposed. *State v. Kendall,* 167 N.W.2d 909, 911 (Iowa 1969).

We find no error; the judgment of the trial court is therefore affirmed.

AFFIRMED.