**STATE of Iowa, Appellee,**

v.

**James Marion MARCHELLINO,**
**Appellant.**

**64172.**

Supreme Court of Iowa.

April 15, 1981.

As Corrected April 16, 1981.

Bruce P. Bickel, Ames, for appellant.

Thomas J. Miller, Atty. Gen., Richard L. Cleland, Asst. Atty. Gen. and Mary E. Richards, Story County Atty., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, McGIVERIN, LARSON and SCHULTZ, JJ.

LARSON, Justice.

The defendant, James Marion Marchellino, was convicted of assault with intent to inflict serious injury, § 708.2(1), The Code 1979. On appeal he presents one issue: did the court err in refusing to allow defendant's witness to testify on the ground he was a witness "expected to be called for the defense" and the State had not been notified of that fact as required by Iowa Rule of Criminal Procedure 12(3). We conclude the sanction applied was not authorized by our Criminal Procedure rules and therefore reverse and remand.

The events culminating in an assault upon the victim, Ben Weir, apparently began when Marchellino, Weir and several other persons were in an Ames bar. Shortly after Weir and his companion, Margaret DeWitt, left the bar, they were met by the defendant and two companions, including Brian Holst. Weir was beaten and kicked by one or more of the group and sustained serious injuries. The victim and Margaret DeWitt testified Marchellino directed the assault to settle an old score. Marchellino testified he was present but that his companions were the aggressors and he had attempted to stop them. Marchellino attempted to bolster his version of the incident by calling Holst as a defense witness. The county attorney objected on the basis the State's witnesses had been deposed by the defendant in advance of trial under rule 12(1), and the defendant had failed to comply with his reciprocal duty under rule 12(3), to inform the State of defense witnesses "expected" to be called. The sanction for this violation of the rule, the State argued, must be the preclusion of the testimony. The trial court agreed.

Rule 12(3) provides for this listing of defense witnesses:

At the taking of a deposition [of the State's witnesses] by a defendant . . . the defendant shall list all witnesses expected to be called for the defense. There shall be a continuing duty throughout trial to disclose additional defense witnesses, and

such witnesses shall be subject to being deposed by the State.

Rule 12 does not provide sanctions for a defendant's failure to disclose his witnesses. Rule 29(2), however, was relied upon by the court to justify its order of preclusion. It provides:

> If no procedure is specifically prescribed by these rules or by statute, the court may proceed in any lawful manner not inconsistent with same.

Marchellino argues that rule 12(3) was not violated because he did not "expect," prior to trial, to call Holst as a witness. Thus, according to his argument, Holst was an "additional defense witness" whose disclosure could be made "throughout trial" rather than at the time depositions were taken by the State. He argues that, even if he had violated the disclosure requirements of the rule, the legislature did not intend to permit a sanction as severe as preclusion; that even if such sanction were permissible, the court abused discretion in applying it here. Such sanction would also violate the fifth, sixth and fourteenth amendments to the United States Constitution, according to his argument.

*I. Defendant's disclosure duty under rule 12(3).* We first address the issue of whether this defendant violated the disclosure mandates of rule 12(3). The State contends the defendant's duty to reveal witnesses arises "at the taking of the depositions" under the rule; that Holst was such a witness and it was the defendant's duty to so notify it. It is clear that Holst was not identified by the defendant at the time of the depositions of the State's witnesses, which were taken well in advance of trial. The defendant counters that only when the decision was actually made to use Holst did he become subject to disclose him as an "additional defense witness." Prior to that time, it is argued, no duty of disclosure arose because he was not "expected" to be called.

Following the State's evidence, the following record was made:

THE COURT: The defendant may put on his evidence. You may put your evidence on.

MR. ROSENBERG: Your Honor, the defendant calls Brian Holst to the stand.

MRS. RICHARDS: Your Honor, at this time the State would object to the calling of this witness on the basis that under Rule 12 the defense has not informed the State of its intention to call any witnesses.

. . . .

THE COURT: What's the name of the *potential* witness?

MR. ROSENBERG: Brian Holst.

THE COURT: And, Mrs. Richards, do I understand the State that there were depositions of your witness taken?

MRS. RICHARDS: That's right, your Honor, some month ago, I believe.

THE COURT: Mr. Rosenberg, have you ever listed or advised the County Attorney prior to now that this is a *potential* witness?

MR. ROSENBERG: No, I have not, your Honor.

THE COURT: Very well. Under the Rule 12(3) you have a duty to advise the County Attorney as to any *potential* witnesses and her objection to his testimony is sustained.

(Emphasis added.) It is apparent from this exchange that the court was concerned with whether Holst was a *potential* witness whose identity had not been previously revealed to the State. While such an objective test would have advantages in its application, the rule is couched in subjective terms: was the witness "expected" to be called?

In attempting to justify his failure to identify this witness at an earlier time, Marchellino's trial attorney (who is not his attorney on appeal), stated he had hoped to enter into a plea agreement, thereby avoiding the necessity of revealing Holst's identity. He also said: "If I had listed [Holst], he could have been brought in, *deposed*, and subjected to criminal charges, and . . . in effect, I was acting as his attorney." (Em-

phasis added.) Yet, the very purpose of rule 12(3) is to provide a means by which a witness for the defendant *could* be deposed. Defense counsel's statement indicates his actions were calculated at least in part to frustrate that purpose by avoiding deposition of Holst. However, despite the reason for the delay in disclosing this witness, our review is limited by the subjective test of the defendant's expectation. Marchellino says he did not expect to call Holst before the trial. At the trial the State presented no evidence to counter Marchellino's claim that Holst was not "expected" to be called at an earlier time. On appeal, apparently recognizing the difficulty in countering that assertion, the State does not argue what that subjective intent was; it merely claims Marchellino and his attorney knew of Holst a long time before trial and failed to notify the State. We conclude the record does not support a conclusion that the defendant had "expected" to call Holst at an earlier time. His disclosure at the time that decision was made was not in violation of rule 12(3).

We recognize that this view of a defendant's duty of disclosure takes some of the "teeth" out of the enforcement process under the rule. Nevertheless, we take the rule as we find it.[1] The legislature, which promulgated the rule, might consider adoption of a more objective standard. Further, despite the apparent ease with which defense counsel may subvert the rule, we point out that such tactics might well be the basis for contempt or disciplinary proceedings. *See* ABA Standards for Criminal Justice, Discovery and Procedure Before Trial, § 11–4.7(b), Commentary at 11–68 (2d ed. 1980).

■ *II. The preclusion sanction.* Even if a violation of the rule had been established, or conceded, as claimed by the State,[2] preclusion was not an authorized sanction for noncompliance. Rule 12(3) itself contains no provision for sanctions of any kind. Rule 29(2), which provides the court may proceed "in any lawful manner if no procedure is specifically prescribed by . . . rules or statute," was cited by the court as authority for imposing the preclusion sanction. However, we do not believe the legislature intended the preclusion sanction to be available in the case of a failure to comply with rule 12(3).

We begin with a comparison of criminal procedure rules 12 and 13. Rule 13 expressly provides for the preclusion sanction for violations of *that* rule:

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may upon timely application order such

---

1. The federal rules raise a similar problem. Rule 16 requires disclosure of evidence which the defendant "intends" to use. In commenting upon the difficulty in implementing a rule using that language, the ABA Advisory Committee has said:

   The condition provided for by Federal Rule 16 would require disclosure of material "which the defendant intends to produce at the trial." Prior to trial, it is quite possible that defense counsel may have evidence available for production at trial. But because of the prosecution's high burden of proof, it is a rare case in which defense counsel can honestly be said to "intend" to produce such evidence until he has heard all of the prosecution's case. By contrast, the prosecuting attorney ordinarily formulates in advance a rather definite trial plan designed to meet his heavy burden. Moreover, such evidence as the defense holds in readiness will often be

   relevant only to credibility of the prosecution's evidence, and this sort of rebuttal evidence is generally free from disclosure requirements.

   ABA Standards, (app. draft 1970) *supra* § 1.2, Commentary at 45–46.

2. The State argues Marchellino now concedes his failure to comply with Rule 12(3). He states at one point in his original brief "that the defendant neglected to advise the State of all witnesses expected to be called for the defense is not denied." In his reply brief, however, he argues that because Holst was only a potential witness he was not obliged to list him earlier. At no point does he concede a violation of rule 12(3). In any event, for the reasons set out in the accompanying division, preclusion was not authorized even if a violation of the rule had been conceded.

party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing any evidence not disclosed, or it may enter such other order as it deems just under the circumstances.

Iowa R.Crim.P. 13(6)(c). Significantly, no such provision is included in rule 12. We do not believe the preclusion sanction of rule 13(6)(c) signals a general legislative imprimatur on the preclusion sanction. Rule 13 deals with production by the defense of documents, tangible evidence and examination results. Rule 12(3), on the other hand, requires a statement by the defendant which might be argued to be communicative in nature. As to this area of discovery, there might understandably be more reluctance, on constitutional grounds, to impose a preclusion sanction against a defendant in a criminal case. *See* ABA Standards, *supra* § 1.2, Committee Commentary, at 46 (1970) (suggesting greater latitude in requiring "nontestimonial" disclosures by criminal defendant). In any event, for whatever reason, rule 13 provides for preclusion; rule 12 does not. Inclusion of sanctions in rule 13 is significant for another reason: if the legislature had intended to permit a court to fashion sanctions, without any express authority, under the general provisions of rule 29(2), it would not have been necessary to include specific authority for sanctions in rule 13(6)(c).

Federal discovery rules provide for sanctions, including preclusion, upon a defendant's failure to comply.[3] Significantly, however, when the ABA Committee adopted a discovery rule very similar to it, the sanction of preclusion was omitted. Its reasons are instructive in this case. It said:

> the exclusion sanction is not recommended because its results are capricious. Thus, exclusion of prosecution evidence may produce a disproportionate windfall for the defendant, while exclusion of de-

fense evidence may lead to an unfair conviction. Either result would defeat the objectives of discovery. In addition, the exclusion of defense evidence raises significant constitutional issues.

II ABA Standards, § 11–4.7 (2d ed. 1980). Other authorities have expressed similar misgivings:

> It would seem strange, in view of our usual generous treatment of criminal defendants, to see the risk of conviction of the innocent deliberately proposed as a matter of policy. Yet, [the proposed federal rule contains] a provision permitting the court to "prohibit" the defendant "from introducing in evidence material not disclosed," which should have been disclosed to the Government under the Rule. Whether such a criminal rule is sound or not (and putting aside possible constitutional objections), at the very least it would constitute a conscious mandatory distortion of the fact-finding process whenever applied.

Weinstein, *Some Difficulties in Devising Rules for Determining Truth in Judicial Trials*, 66 Col.L.Rev. 223, 237 (1966); *see* Orfield, *The Federal Rules of Criminal Procedure*, 10 St.L.Univ.L.J. 445, 451 (1966); 1 C. Wright & A. Miller, *Federal Practice & Procedure*, § 260, at 533 (1969); Note, *The Preclusion Sanction—A Violation of the Constitutional Right to Present a Defense*, 81 Yale L.J. 1342 (1972); Note, *Criminal Law; Constitutionality of Conditional Mutual Discovery Under Federal Rule 16*, 19 Okla.L.Rev. 417, 424 (1966).

While we have alluded to possible constitutional impediments to preclusion, we do not pass on the constitutionality of it as urged by the parties. We prefer to decide issues on nonconstitutional grounds whenever possible. *State v. Thomas*, 219 N.W.2d 3, 4 (Iowa 1974). We consider the constitu-

---

**3.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a con-

tinuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. . . .

Fed.R.Crim.P. 16(d)(2).

tional implications only in attempting to determine whether the preclusion sanction may be implied in construing and applying the rules. In interpreting these rules, we presume that compliance with the constitution of Iowa and the United States was intended, as well as a just and reasonable result. §§ 4.4(1), (3), The Code 1981. Because of the severity of the preclusion sanction, its possible constitutional implications and widespread criticism of it, we will not assume the legislature intended to grant such authority by implication.

Further, while we have approved local rules incorporating preclusion sanctions on the basis of the courts' inherent authority, those cases are distinguishable. We do not believe the court had inherent authority to apply that sanction here. Based on inherent authority rationale, we have upheld local rules which preclude assertion of certain defenses upon noncompliance, see *Johnson v. Miller*, 270 N.W.2d 624 (Iowa 1978) (local rule requiring pretrial notice of affirmative defenses; preclusion sanction authorized for noncompliance) and in *Iowa Civil Liberties Union v. Critelli*, 244 N.W.2d 564, 568–69 (Iowa 1976), we found inherent authority in a district court to adopt rules on pretrial proceedings in criminal cases. The rationale of these cases is stated in *Critelli*: "Where the legislature has not acted, courts possess a residuum of inherent common-law power to adopt rules to enable them to meet their independent constitutional and statutory responsibilities." In contrast to *Critelli*, in which we observed the local rule advanced the laudable goal of securing speedy trials, there is no showing here that less-severe sanctions could not adequately assure discovery compliance, nor that the courts' goal of assuring a full opportunity to present a defense weighs less heavily in the balance than their interest in enforcing pretrial discovery by use of such sanctions.

By concluding that a trial court lacks authority to preclude evidence as a sanction under rule 12(3), we do not mean to say that it is powerless to secure counsel's compliance with the rules. The court should, after hearing, select an alternative which will encourage compliance with the rules, yet result in a minimum restraint on the presentation of evidence; radical surgery should not be performed on the defendant's case if conservative therapy will bring about a cure. Because discovery standards are designed to implement, not to impede, fair and speedy determinations of cases, it is suggested "that the court should seek to apply sanctions which affect the evidence at trial and the merits of the case as little as possible . . . ." ABA Standards, *supra* § 5.1, Commentary, at 108 (1970).

In the present case, the court heard Marchellino's reasons why the disclosure was not made earlier. It was obviously not satisfied; however, it took no evidence and made no finding as to what prejudice, if any, was caused by the delay. It is conceivable that, after its inquiry into the matter, the trial court would conclude no sanctions were called for. (Sanction rules do no *require* their imposition; they merely grant discretion to do so. *Hansen v. United States*, 393 F.2d 763, 770 (8th Cir., *cert. denied*, 393 U.S. 833, 89 S.Ct. 103, 21 L.Ed.2d 103 (1968)). The court might have concluded a recess in the trial or a continuance would afford the State an adequate opportunity to meet the "new" evidence. And if it had decided an aggravated situation existed, it might have concluded that contempt or disciplinary proceedings were warranted. It should be pointed out that none of these alternatives require express authority; they are common stock in trade of the trial court, a part of its inherent powers. And, while some of them would cause a disruption in the proceedings, none of them has the potential for prejudice of preclusion.

We conclude the court erred in imposing the sanction of preclusion. The case must be reversed and remanded.

REVERSED AND REMANDED.