STATE of Iowa, Appellee,

v.

Thomas J. LETO, Appellant.

No. 64359.

Supreme Court of Iowa.

May 13, 1981.

484

Martha Shepard, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., John P. Messina, Asst. Atty. Gen., and Dan L. Johnston, Polk County Atty., for appellee.

Considered by HARRIS, P. J., and ALLBEE, McGIVERIN, LARSON and SCHULTZ, JJ.

LARSON, Justice.

The defendant Thomas J. Leto has appealed from his conviction of second-degree theft under sections 714.1(4) and 714.2(2), The Code 1979, arising from his possession of a stolen van. He contends the court erred in (1) refusing to suppress evidence seized under a search warrant; (2) refusing to sustain his motions for mistrial and to strike, based upon the State's introduction of evidence of his inculpatory statements not divulged prior to trial, as required by Iowa Rule of Criminal Procedure 13; and (3) admitting evidence of other crimes. We affirm the trial court.

### I. The Search Warrant.

The search warrant was issued on the application of Officer Paul Womack, who furnished his own affidavit and statements of Paula Mohr, an informant. Various items of evidence relating to stolen vehicles were seized under the warrant. The defendant challenges the search warrant on two grounds: (1) the facts contained in the search-warrant affidavit of Officer Womack were insufficient to establish probable cause because no illegal activities were described, and there was no evidence that the items to be seized were located at the defendant's residence at the time of the search; and (2) it allowed the searching officers to conduct a general search.

#### A. Probable cause.

In addressing the question of the sufficiency of the underlying facts shown for the issuance, we first note the well-established principles which apply. An unlawful search will preclude the use at trial of all evidence obtained in the search or through leads uncovered by the search. *Wong Sun v. United States,* 371 U.S. 471, 484–85, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441, 453 (1963). Because the defendant contends the search warrant was invalid under the fourth amendment, this court's scope of review is de novo, and we make an independent evaluation of the totality of the circumstances. *State v. Hall,* 297 N.W.2d 80,

89 (Iowa 1980). Probable cause exists for the issuance of a search warrant "when the facts and circumstances presented to the judicial officer are sufficient in themselves to justify the belief of a reasonably cautious person that an offense has been or is being committed." *State v. McManus*, 243 N.W.2d 575, 579 (Iowa 1976); *accord, State v. Post*, 286 N.W.2d 195, 199 (Iowa 1979); *State v. Easter*, 241 N.W.2d 885, 886 (Iowa 1976). While probable cause requires more than a "mere suspicion" of criminal activity, *State v. Swartz*, 244 N.W.2d 553, 554 (Iowa 1976), *State v. Birkestrand*, 239 N.W.2d 353, 357 (Iowa 1976), or "innocent-appearing activity", *State v. McManus*, 243 N.W.2d at 579; *State v. Post*, 286 N.W.2d at 200, "there is a large difference between" proof of guilt and proof of probable cause, *Brinegar v. United States*, 338 U.S. 160, 173, 69 S.Ct. 1302, 1309, 93 L.Ed. 1879, 1889 (1948); *Locke v. United States*, 7 Cranch 339, 348, 3 L.Ed. 364, 367 (1813) ("the term 'probable cause' ... means less than evidence which would justify condemnation"). In marginal cases a search conducted pursuant to a warrant may be constitutional even though one conducted without a warrant may be invalid. *United States v. Ventresca*, 380 U.S. 102, 106, 85 S.Ct. 741, 744, 13 L.Ed.2d 684, 687 (1965) ("[a]lthough in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants").

 Officer Womack, in his affidavit accompanying the search-warrant application of June 21, 1979, stated: [1]

1. On 6/12/79 I personally observed at 5758 N.E. 29th Street, Polk County, four complete stolen vehicles and parts of bodies from numerous others; specifically, a dark brown 1976 CJ5 Jeep, VIN J6F83AA014054, which had been reported stolen four days

earlier; license plate attached to same registered to Thomas L. Wagner.

2. Also observed at above address, a 1978 silver Ford van stolen from Ankeny, Iowa, 7/6/78, Serial No. E14HHCF3241; said vehicle parked next to the above-listed jeep.

4. That affiant's investigation reveals that Mr. Leto operates a body repair business including painting and welding of damaged vehicles.

5. That personal observation of numerous vehicles recovered at 5758 N.E. 29th Street revealed that many parts of same had been welded and interchanged.

6. Arrest warrants have been issued for Mr. Proctor of 5758 N.E. 29th and Mr. Wagner whose license plate was discovered on the stolen jeep recovered at Proctor's residence.

Additional information was provided by Paula Mohr, an informant, whose evidence was related by Officer Womack in his application:

1. That Paula Mohr is registered owner of 1976 CJ5 Jeep (listed above). That she had same repaired by Mr. Leto at address listed herein on or about June 4, 1979.

2. That said jeep was stolen on or about June 8, 1979.

3. That on May 25, 1979, she was a passenger in a van driven by Mr. Leto to Wisconsin. During said trip, Mr. Leto stated that van was recently acquired and that he had rebuilt it from salvage. She observed a CB radio and tape deck wired together attached to the cigarette lighter.

4. That on or about 6/13/79 she identified her stolen 1976 CJ5 Jeep, which was in police custody, and she also advised police that the van referred

---

1. The search warrant application also referred to information received from four unnamed informants. The requisite trustworthiness of the informants was not established and the State, on appeal, concedes that information must be disregarded in assessing probable cause. *See Aguilar v. Texas*, 378 U.S. 108, 114–15, 84 S.Ct. 1509, 1513–14, 12 L.Ed.2d 723, 729 (1964); *State v. Post*, 286 N.W.2d 195, 199 (Iowa 1979).

to above was also in their custody, along with the Jeep.

5. That after arrival with Leto to Wisconsin in van, Leto introduced her to Proctor (all supra).

■ The defendant argues that the facts related in the application were insufficient for issuance of the warrant because they create only a "mere suspicion" of criminal activity. *See Spinelli v. United States*, 393 U.S. 410, 414, 89 S.Ct. 584, 588, 21 L.Ed.2d 637, 642–43 (1969). He notes the absence of any evidence in the affidavit that he had "knowledge of the van's heritage," *viz.*, that the van was stolen by Wagner almost a year earlier. It is true that section 714.1(4) requires the State to prove at trial that Leto knew or had reasonable cause to believe the property was stolen. However, the element of knowledge need not be "proven" in the application. As stated above, the test for probable cause is whether the facts shown justify the belief of a reasonable, prudent person that a crime has been committed; the supporting affidavit need not contain sufficient information to sustain a conviction. *See Brinegar v. United States*, 338 U.S. at 173, 69 S.Ct. at 1309, 93 L.Ed. at 1889.

■ The defendant also argues that the facts alleged were innocent in appearance, and therefore presumed to be innocent, citing *State v. Boer*, 224 N.W.2d 217, 221 (Iowa 1974). *Boer*, however, did not hold that innocent-appearing activities must be disregarded in assessing probable cause; it held that they could not supply the requisite independent support of an officer's conclusory statements of grounds for the issuance of the warrant. *Id.* at 220–21. That is not the case here. The affidavit shows a large-scale auto theft operation involving Wagner and Proctor. Leto's involvement in it can be inferred from his possession of the stolen van and his suspect statement to Mohr concerning his acquisition and rebuilding of it. Also, Leto is shown by the affidavit to be a body repairman, a skill necessary to an auto theft operation, and that he worked on Paula Mohr's jeep within one week of its theft.

When viewed in a "common sense" manner, *United States v. Ventresca*, 380 U.S. at 108, 85 S.Ct. at 746, 13 L.Ed.2d at 688; *State v. Paschal*, 300 N.W.2d 115, 118 (Iowa 1981), we believe the facts set out in the affidavit were sufficient for issuance of the warrant. When they are viewed collectively, the facts create more than "mere suspicion." They are sufficient to justify the belief of a reasonably cautious person that an offense has been committed.

■ The warrant was issued and executed for the defendant's residence and curtilage. The defendant claims there was no showing that the items to be seized were located at his residence at the time of the search. Probable cause must exist to search the particular premises: there must be a "nexus between the items to be seized and the place to be searched," as may be culled from "the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide stolen property." *United States v. Spearman*, 532 F.2d 132, 133 (9th Cir. 1976) (*quoting United States v. Lucarz*, 430 F.2d 1051, 1055 (9th Cir. 1970)); *see State v. Post*, 286 N.W.2d at 199; *State v. Iowa District Court*, 247 N.W.2d 241, 248–49 (Iowa 1976) (reasonable inference that stolen property kept at suspect's residence). Leto's repair shop was located at his house: It was reasonable to infer the stolen property would be located there.

B. *Scope of the warrant: the particularity requirement.*

■ The warrant permitted a search for these items:

Red 1979 Bronco, VIN U15SLDG9487 Bronco or parts thereto, VIN U15HLDG0619

Motor vehicle titles from stolen or salvaged vehicles

Towing bills and receipts

V.I.N. tags

License plates

Vehicle registrations

Bills of sale; this and all of the above from stolen or salvaged vehicles

Stereo radio and VIN Tag J6F83AA014054 from a 1976 jeep, CJ5

Custom made stereo speakers to above-listed stereo

CB radio and tape deck jointly wired for use with the cigarette lighter

The defendant contends the warrant was too general and, in effect, was a fishing license for his premises. He relies on *Stanford v. Texas*, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965), which held that a warrant authorizing a search for "books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments of the Communist Party in Texas" was too general. Concluding "[t]he indiscriminate sweep" of the warrant was "constitutionally intolerable", the Court in *Stanford, id.* at 485, 85 S.Ct. at 511, 13 L.Ed.2d at 437, emphasized that "when the 'things' [to be seized] are *books*, and the basis for their seizure is the ideas they contain," the particularity requirement "is to be accorded the most scrupulous exactitude." (Emphasis added.) Thus, "[t]he point is that it was not *contraband* [e. g., "weapons, narcotics, or 'cases of whiskey' "] which was ordered to be seized, but *literary material*." *Id.* at 486, 85 S.Ct. at 512, 13 L.Ed.2d at 437 (emphasis added). Thus, *Stanford* is to be distinguished on its facts: in that case the warrant permitted the seizure of nearly 300 books and pamphlets—including some written by Karl Marx, Paul Satre, Theodore Draper, Fidel Castro, Earl Browder, Pope John XXIII, and Mr. Justice Hugo Black—as well as the defendant's private documents and papers. *Id.* at 479–80, 85 S.Ct. at 508–509, 13 L.Ed.2d at 434. Unlike *Stanford*, the search warrant under consideration here did not involve "literary materials," or "private documents and papers."

In *State v. Hamilton*, 236 N.W.2d 325, 327–29 (Iowa 1976), this court considered a warrant which authorized a search for "any and all controlled substances." The defendant had contended this language amounted to a "general warrant"; however, relying upon *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) [2] and other cases, the court held it did not.

Recent federal cases have addressed the particularity requirement under analogous facts. In *United States v. Dennis*, 625 F.2d 782, 792 (8th Cir. 1980), the court considered a warrant authorizing the seizure of "certain books and records (or items of evidence) relating to the extortionate credit transaction business." The court held that the warrant was constitutionally sufficient because "[t]he degree of specificity required depends on the type of goods to be seized":

> Where the precise identity of goods cannot be ascertained at the time the warrant is issued, naming only the general class of items will suffice because less particularity can be reasonably expected than for goods (such as those stolen) whose exact identity is already known at the time of issuance.

*Id.* (quoting *United States v. Johnson*, 541 F.2d 1311, 1314 (8th Cir. 1976)). Given the nature of the crime of loan-sharking, the court concluded that the warrant "set reasonable parameters for the search." *Id.* In *United States v. Williams*, 633 F.2d 742, 746 (8th Cir. 1980), the court noted the warrant described the particular *types* of documents sought and specified that they must relate to the specific crimes under investigation. Thus limited, the warrant was held to be sufficiently detailed to withstand attack. In *United States v. Johnson*, 541 F.2d at 1314, it was observed that courts have grounded their decisions in "practicality and reasonableness"; accordingly, they

> have found no impermissible vagueness in descriptions specifying merely "bookmaking paraphernalia"; "gambling parapher-

**2.** The Court in *Coolidge v. New Hampshire* said:

> The second, distinct objective [served by the warrant requirement] is that those searches deemed necessary should be as limited as possible. Here, the specific evil is the 'general warrant' abhorred by the colonists, and the

problem is not that of intrusion per se, but of a general, [exploratory] rummaging in a person's belongings. The warrant accomplishes this second objective by requiring a 'particular description' of the things to be seized.
403 U.S. at 467, 91 S.Ct. at 2038–39, 29 L.Ed.2d at 583 (citations omitted).

nalia"; "run down sheets ... and like paraphernalia", or "nine guns" when twenty-six were actually present to be seized.

In view of the principles set forth in these cases, it appears the warrant under consideration here does not suffer from a lack of specificity. All vehicles were identified by their VIN tags; the stereo speakers were "custom made"; and although the license plates, registrations, titles, towing bills, receipts and bills of sale were not specifically referred to by identification number, they were limited to those "from stolen or salvaged vehicles." The warrant was thus limited to a *type* of item to be seized and limited the scope of seizure to those items relevant to the present investigation. It did not permit the executing officers to rummage through the defendant's private belongings. The description was sufficiently definite for the executing officers "to reasonably ascertain and identify ... the things to be seized." *Id.* at 1313; *see United States v. Williams*, 633 F.2d at 746.

## II. Motions for Mistrial and to Strike.

The charge against Leto, arising from alleged possession of the stolen van, required the State to show he knew or had reasonable cause to believe it had been stolen. § 714.1(4), The Code 1979. At trial, Kathy Huffman testified for the State about a prior conversation with Leto. On direct examination she testified:

Q. Now did Tom Leto make any reference to the van?

A. He did.

\* \* \* \* \* \*

Q. [W]hat is the extent of the conversation as you recall it about the van, concerning Mr. Leto and the van?

A. It was that the van had to get off— come off the street.

The defendant's counsel then cross-examined Huffman about the events contemporaneous with that conversation but without reference to the statement itself. On redirect examination by the State, Huffman then testified:

Q. When did you have the conversation with Mr. Leto concerning it having to be taken off the street?

A. It was the night [Wagner] was late to come get the van.

\* \* \* \* \* \*

Q. So there was reference at that time to the fact *that it was a hot vehicle*, is that the appropriate way to term it?

A. *Yes.*

Q. *And that was made by [the defendant]*, is that correct?

A. *Yes.*

(Emphasis added). The defendant declined to conduct recross-examination of Huffman. After a short recess, the witness was recalled by the State for further redirect examination; then after recross-examination the defendant moved for a mistrial, and in the alternative, to strike Huffman's testimony, on the ground he had not been previously alerted to the inculpatory statement testified to by the witness.

■ Iowa Rule of Criminal Procedure 13 provides in part:

Upon pretrial motion of a defendant the court shall order the attorney for the state to permit the defendant to inspect and copy or photograph ... the substance of any oral statement made by the defendant which the state intends to offer in evidence at trial.

Iowa R.Crim.P. 13(2)(a)(1). A companion rule further provides:

If, subsequent to compliance with an order issued pursuant to this rule, either party discovers additional evidence, or decides to use evidence which is additional to that originally intended for use, and such additional evidence is subject to discovery under this rule, the party shall promptly file written notice of the existence of the additional evidence to allow the other party to make an appropriate motion for additional discovery.

Iowa R.Crim.P. 13(5). A pretrial motion for production of evidence had been filed by Leto pursuant to rule 13(2)(a)(1):

Let the State produce for copying and inspection all written or recorded statements or oral confessions or admissions subsequently reduced to writing, or summarized in police reports, made by the Defendant or copies—whether inculpatory or exculpatory—thereof, within the possession, custody or control of the County Attorney, the existence of which is known or may become known to the County Attorney. This request includes statements, made to witnesses other than police officers at anytime subsequent to the theft.

While it might be argued the inculpatory statement attributed to Leto fell outside the scope of the motion for production because it was not a "written or recorded statement or oral confession subsequently reduced to writing, or summarized in policy reports," the State apparently concedes the motion was broad enough to cover it. The issue then, is the appropriate remedy to be applied. Rule 13 provides:

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court *may upon timely application* order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing any evidence not disclosed, or it may enter such other order as it deems just under the circumstances.

Iowa R.Crim.P. 13(6)(c) (emphasis added). This rule accords considerable discretion to the trial court in enforcing the discovery rules. *See* ABA Standards for Criminal Justice, *Discovery and Procedure Before Trial* § 4.7, Commentary at 107 (1970); Fed. R.Crim.P. 16(d)(2), Advisory Committee Note ("Such discretion will permit the court to consider the reasons why disclosure was not made, the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances.") We said recently in *State v. Marchellino*, 304 N.W.2d 252, 255 (1981) that the preclusion sanction was not available for a *defendant's* failure to comply with his duty of

disclosure under Iowa Rule of Criminal Procedure 12(3) because it was not provided, expressly or by implication, in the rules. Preclusion is, however, among the options provided for failure of the *State* to comply with its discovery duties. Iowa R.Crim.P. 13(6)(c); *State v. Marchellino*, 304 N.W.2d at 256. The issue here is whether the trial court abused its discretion in denying the mistrial and the motion to strike the challenged testimony.

■ In reviewing the record on this issue, we conclude the court did not abuse its discretion in refusing to impose the sanctions requested by Leto. The assistant county attorney acknowledged that he was aware of Leto's inculpatory statement the day before Huffman testified about it. However, according to him, the witness had merely related Leto's statement about getting the van off the street; the embellishment on that statement, that it "was a hot vehicle," did not occur until her redirect examination at trial.

The reasons for failure to provide timely discovery may properly be considered by the court. Fed.R.Crim.P. 16(d)(2), Advisory Committee Note, *supra*. In explaining his failure to divulge the inculpatory statement, the assistant county attorney said, "[t]here was a reference [in the pretrial interview of Huffman] that the statement was made the vehicle had to be off the street. That was understanding of what was going to be out of [sic] trial. I apparently, at the time, did not think that was important enough to get on the phone to [defense counsel]." The trial court did not state its reasons for denying the defendant's request for sanctions. However, under the circumstances of this case, we do not believe the State's failure to divulge the Huffman statement mandated a mistrial or striking of the testimony.

Moreover, as the State argues, the defendant was required to make timely objection to the State's lack of compliance. It contends the defendant failed to make a "timely application" for an order as required under rule 13(6)(c) to either compel

discovery or impose sanctions. We note that in contrast to federal rule 16(d)(2), which is virtually identical to rule 13(6)(c), our rule requires timely application for the order. We assume that language was added for a purpose, and that failure to bring the matter to the court's attention could amount to a waiver. Our rule requires that a motion to strike be made "as soon as the grounds therefor are apparent or as soon as is convenient after the objectionable statements are given by the witness." *State v. Whitfield*, 212 N.W.2d 402, 410 (Iowa 1973); *see State v. Bruno*, 204 N.W.2d 879, 887 (Iowa 1973); *State v. Smith*, 248 Iowa 603, 610, 81 N.W.2d 657, 661 (1957). A similar requirement exists as to a motion for mistrial. *State v. Cornelius*, 293 N.W.2d 267, 269 (Iowa 1980) ("[a] mistrial motion must be made when the grounds therefor first became apparent"; "the defendant should have asked for a mistrial when the allegedly prejudicial question was asked," no error preserved); *see State v. Ware*, 205 N.W.2d 700, 702 (Iowa 1973).

Application of this reasoning to the requirement of "timely application" in rule 13(6)(c) points to the conclusion that the defendant failed to properly invoke its remedies. The evidence was admitted without objection on direct and redirect examination; the defendant's motions made following recross-examination were not timely. The defendant offered no explanation for his tardiness in bringing the matter to the court's attention. Accordingly, the court did not abuse its discretion in denying the mistrial motion and motion to strike.

### III. Admission of "other crimes" evidence.

At trial, the State introduced evidence tending to show that the defendant was involved in the theft of three pickup trucks, owned by Kenneth Hansen, Craig Warner, and Gary Matthews, in the Des Moines area. The reception of this "other crimes" evidence, he contends, constituted reversible error.

Knowledge that goods in possession are stolen may be inferred from other acts of a similar nature. 2 J. Wigmore, *Evidence* § 234, at 227–29 (1940). "The reasoning ... is that the recurrence of a like act lessens by each instance the possibility that a given instance could be the result of inadvertence, accident, or other innocent intent." *Id.* at 228; *see State v. Cott*, 283 N.W.2d 324, 326–27 (Iowa 1979); *State v. Folkens*, 281 N.W.2d 1, 5 (Iowa 1979); *State v. McDaniel*, 265 N.W.2d 917, 921 (Iowa 1978) (other crimes evidence admissible to show absence of mistake or accident). However, even if such evidence is relevant, the trial court must exercise its discretion in determining whether its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. *State v. McDaniel*, 265 N.W.2d at 921; *State v. Johnson*, 224 N.W.2d 617, 621 (Iowa 1974).

The defendant argues that the State failed to present "clear proof" that he was nvolved in the other crimes. *State v. Johnson*, 224 N.W.2d 617, 621 (1974); *State v. Fetters*, 202 N.W.2d 84, 92 (1972). This requirement is said to ensure that "the probative value of the evidence ... outweigh[s] the possibility of prejudice to the defendant." *United States v. Broadway*, 477 F.2d 991, 995 (5th Cir. 1973). We apply the "clear proof" standard here in assessing the probative value of the "other crimes" evidence. All three of the other thefts occurred within a ninety-day period. Leto possessed a pickup, with an attached camper, which included parts definitely shown to have come from the Hansen and Matthews vehicles. In addition, it was shown to have incorporated several parts which were similar to those from the Warner vehicle, although definite identification was not possible. The search of Leto's residence, moreover, revealed a mutilated license plate from the Warner pickup in a coat sleeve; the VIN plate on the pickup was illegally attached; and Leto and Wagner had been observed working on the pickup in Leto's garage.

This evidence was of substantial probative value; the issue is whether that probative value is "substantially out-

weighed" by the danger of prejudice. *State v. McDaniel*, 265 N.W.2d at 921. To the extent the evidence of other crimes went to show Leto's knowledge that the van in question was stolen, it was largely cumulative; Kathy Huffman testified Leto knew it was "hot" and had to be taken "off the street". Because such evidence might improperly tend to show that the defendant had a propensity to commit crime, we must rely upon the trial court's exercise of its sound discretion to weigh probative value against prejudicial effect. *Id.* The trial court apparently determined the probative value was sufficient to warrant its admission. We note that a limiting instruction was given to the jury to explain the limited purposes for which the other incidents could be considered: "to show intent, knowledge, common scheme or identity." The court did not abuse its discretion in admitting the evidence of other crimes for the purposes as so limited.

We find no reversible error.

AFFIRMED.