COLLINS, TAX COMMR., APPELLEE, v. FERGUSON, AUDITOR, APPELLANT.

(No. 75AP-475—Decided March 30, 1976.)

Mr. William J. Brown, Attorney General, Mr. John C. Duffy, Jr., Mr. Clinton J. Miller and Mrs. Maryann B. Gall, for appellee.

Mr. William J. Brown, Attorney General, and Mr. Robert H. Stromberg, for appellant.

REILLY, J. This is an appeal from a judgment of the Court of Common Pleas of Franklin County. Plaintiff, the appellee herein, sought a declaratory judgment concerning the meaning of pertinent parts of R. C. 5747.18, as well as injunctive relief against defendant, the appellant. The trial court, after a hearing upon the merits and an excellent written decision, entered the following journal entry:

"Upon consideration the Court of Common Pleas finds that Section 5747.18 of the Revised Code makes confidential state income tax returns filed by Ohio taxpayers. Section 5747.18 permits the Tax Commissioner to release confidential income tax returns under two limited conditions:

"(1) for official purposes, and (2) in accordance with judicial order.

"The Court further finds the Auditor of State has shown neither an official purpose or a proper judicial order.

The Court finds that the Auditor of State is barred by the express provisions of Section 5747.18 from examining personal and individual state income tax returns, except upon proper judicial order.

"Therefore, the Court of Common Pleas orders that the Auditor of State be permanently enjoined from enforcing his subpoena ordering the Tax Commissioner to disclose or produce state personal income tax returns."

The transcript indicates that the facts are not essentially disputed. Plaintiff is the duly appointed Tax Commissioner of Ohio. His duties include the enforcement and administration of Ohio's tax laws. He has jurisdiction to collect all state taxes excepting the liquor gallonage tax, and taxes upon foreign insurance companies doing business in Ohio. The Tax Commissioner also has the duty of making assessments against delinquent parties, and determinations concerning the amount of tax liability of corporations and individuals. The Ohio personal income tax is included among the taxes within the Tax Commissioner's jurisdiction. The Commissioner collects income tax payments and audits returns to determine tax liability. He also assesses delinquencies and decides the amounts of refunds (R. C. Chapter 5747). It is noteworthy that returns are made confidential by an express statutory provision (R. C. 5747.18).

This case began when plaintiff received a letter from defendant requesting permission to examine 88 income tax returns, whereupon plaintiff, upon inquiry, ascertained that an examiner employed by defendant had been working at the taxation department's income tax division for about a week, inspecting tax returns. Several days thereafter, plaintiff received a second letter from defendant requesting to view additional tax returns. Plaintiff replied by letter, questioning whether defendant had previously been granted authorization to inspect income tax returns by his predecessor. Defendant informed plaintiff that a continuing audit of the income tax division was being initiated, and asked for general access to inspect all pertinent information, including returns in the Department of Taxation. Plaintiff replied that because of the confidential nature of income

tax returns he would not allow such inspection. It appears defendant's position was based on an Attorney General's opinion interpreting the privacy aspect of the income tax.

At any rate, plaintiff received a subpoena ordering him to make available to a state examiner of defendant's office about 243,000 state income tax returns, along with supporting information. Plaintiff filed a copy of his rule, which outlines the procedure to be pursued by officials seeking permission to inspect income tax returns, with the Secretary of State. In substance, plaintiff is charged by law with examining each return claiming a refund, determining the amount due taxpayers, and certifying this amount to the Auditor, who draws the warrants payable to taxpayers. The transcript outlines plaintiff's administrative procedures in processing tax returns. Such administration is, doubtless, within the plaintiff's jurisdiction. The question in this case is whether defendant also has the power to examine personal and individual state income tax returns.

The parties, of course, cogently argue different positions. It is plaintiff's contention that income tax returns are confidential (R. C. 5747.18) and open to inspection only by persons charged by law with the administration and enforcement of state and local tax laws, who establish "an official purpose" for such inspection. Moreover, plaintiff asserts that defendant is not responsible for the administration and enforcement of provisions of the income tax law, specifically those involving liability or the calculation of refunds. Conversely, defendant asserts that the Auditor's duties require him to perform a continuing audit of all state departments, including the Department of Taxation and, as an integral part of state receipts and expenditures, including the administration and enforcement of tax laws, the auditing function involving income tax represents "official purposes."

In any event, the trial court entered the above quoted judgment, and defendant has timely appealed. The assignment of error reads as follows:

"The trial court erred in holding that the Auditor of the State of Ohio, defendant therein, does not state any

'official purposes' under Section 5747.18, Ohio Revised Code, when conducting an audit of the Tax Department of the State of Ohio pursuant to specific Ohio Revised Code sections and in specific areas, in order to allow the Auditor access to personal income tax returns.''

. We stress at the outset the Ohio income tax law is a creature of the General Assembly. Its nature involves questions of personal privacy which require strict statutory construction. The nub of the matter is that the legislature has·acted in this particular area, and if it chooses to amend its previous enactments, that, to be sure, is the legislature's province. The present question involves the law as it is now. R. C. 5747.11, in relevant part, states as follows:

"Applications [for overpayments] shall be filed with the tax commissioner on the form prescribed by him, within ninety days from the date it is ascertained that the assessment or payment was illegal, erroneous, or excessive. Applications for refund must be filed with the commissioner within four years from the date of the illegal, erroneous, or excessive payment of the tax. *On filing of such application, the commissioner shall determine the amount of refund due and certify such amount to the auditor of state and treasurer of state. The auditor of state shall draw a warrant for such certified amount on the treasurer of state* to the person claiming such refund. The treasurer of state shall make such payments from the tax refund rotary·fund in accordance with section 5703.052 (5703.05.2) of the Revised Code.'' (Emphasis added.)

· Thus, it is the Tax Commissioner, rather than the Auditor, who has the duty to determine the amount of any refund due taxpayers with refund claims, and to certify the amount due, to the Auditor and Treasurer of State. The Auditor, when receiving the Tax Commissioner's certificate,·is required to draw a warrant upon the treasurer for the amount of the refund certified as due to taxpayers. Moreover, R. C. 5747.18 also includes the following pertinent provisions:

· "Any information gained as the result of returns.

investigations, hearings, or verifications required or authorized by Chapter 5747, of the Revised Code *is confidential and no person shall disclose such information, except for official purposes or except in accordance with proper judicial order. \* \* \*"* (Emphasis added.)

Consequently, while information in various state departments, including the Department of Taxation, is generally open for inspection by government officials (R. C. 5715.41), the foregoing section plainly states an exception to this general rule. The statute requires a standard of confidentiality upon information included in an individual's state income tax return. Thus, plaintiff is required to retain information contained upon state income tax returns as strictly confidential. There are other sections requiring confidentiality (note R. C. 5711.10 and 5733.03). This is demonstrative of the General Assembly's intent to preserve the privacy of financial information which is required to be disclosed to the Tax Commissioner.

The above quoted statute (R. C. 5747.18), however, does allow the Tax Commissioner to release confidential information under two specifically limited circumstances: (1) for official purposes, and (2) in compliance with a proper judicial order. Manifestly, the issue in this case is whether the Tax Commissioner may release confidential information included under the first exception, or "for official purposes," when requested or subpoenaed by the Auditor. The fact is that R. C. Chapter 5747 does not categorically specify the meaning of the term "official purposes." Notwithstanding, R. C. 5747.01, in relevant part, includes the following:

"Except as otherwise expressly provided or clearly appearing from the context, any term used in Chapter 5747. of the Revised Code has the same meaning as when used in a comparable context in the internal revenue code, and all other statutes of the United States relating to federal income taxes."

There are two sections of the Internal Revenue Code which are pertinent to this issue. Section 7213(a)(2) reads:

"State employees.—Any officer, employee, or agent of any State or political subdivision, who divulges (except as authorized in section 6103(b), or when called upon to testify in any judicial or administrative proceeding to which the State or political subdivision, or such State or local official, body, or commission, as such, is a party), or who makes known to any person in any manner whatever not provided by law, any information acquired by him through an inspection permitted him or another under section 6103(b), or who permits any income return or copy thereof or any book containing any abstract or particulars thereof, or any other information, acquired by him through an inspection permitted him or another under section 6103(b), to be seen or examined by any person except as provided by law, shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $1,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution."

Furthermore, Section 6103 (b)(2) of the Internal Revenue Code, also, reads as follows:

"State bodies or commissions.—All income returns filed with respect to the taxes imposed by chapters 1, 2, 3, and 6 (or copies thereof, if so prescribed by regulations made under this subsection), shall be open to inspection by any official, body, or commission, lawfully charged with the administration of any State tax law, if the inspection is for the purpose of such administration or for the purpose of obtaining information to be furnished to local taxing authorities as provided in this paragraph. The inspection shall be permitted only upon written request of the governor of such State, designating the representative of such official, body, or commission to make the inspection on behalf of such official, body, or commission. The inspection shall be made in such manner, and at such times and places, as shall be prescribed by regulations made by the Secretary or his delegate. Any information thus secured by any official, body, or commission of any State may be used only for the administration of the tax laws of such State, except

that upon written request of the governor of such State any such information may be furnished to any official, body, or commission of any political subdivision of such State, lawfully charged with the administration of the tax laws of such political subdivision, but may be furnished only for the purpose of, and may be used only for, the administration of such tax laws.''

Hence, federal income tax returns are open to inspection solely by public officials lawfully charged with the administration of state laws, and only if the inspection is for the purpose of administrating such laws.

Therefore, any exception to the confidentiality principle of information included in income tax returns could be rationalized only when the requesting party's inspection is directly related to the administration of any state or local tax law. Consequently, plaintiff shall not release tax returns to other public officials unless it is affirmatively demonstrated that they must have access to them to perform legally delegated duties of administering or enforcing tax laws of the state of Ohio or a political subdivision thereof. Thus, the question becomes whether the general or specific duties of the Auditor (appellant), in R. C. Chapters 115 and 117, include the administration of state income tax laws. R. C. 115.06 makes the Auditor the chief accounting officer of the state, and requires him to keep records concerning all money, stocks, bonds, securities, and other property deposited into or withdrawn from the state treasury. Furthermore, R. C. 115.27 gives the Auditor the duty to conduct a detailed audit and inventory of the state treasury, and the accounts and transactions of the Treasurer once each year. R. C. 115.35 includes the Auditor's duty involving payments made from the state treasury:

"The auditor of state shall examine each voucher presented to him, or claim for salary of an officer or employee of the state, or per diem and transportation of the commands of the national guard, or judgment against the state pursuant to Chapter 2743, of the Revised Code, and if he finds it a valid claim against the state and legally due and that there is money in the state treasury appropriated

to pay it, and that all requirements of law have been complied with, he shall issue a warrant on the treasurer of state for the amount found due, and file and preserve the invoice in his office. He shall draw no warrant on the treasurer of state for any claim unless he finds it legal and that there is money in the treasury which has been appropriated to pay it.''

The Bureau of Inspection and Supervision of Public Offices is established by R. C. 117.01 as a division of the Auditor's office. This section makes the Auditor the bureau's chief inspector. R. C. 117.09 establishes the time within which each office must be audited, including matters into which the bureau inquires. R. C. 117.03, concerning the powers of the Auditor and examiners in such examinations, reads as follows:

"The chief inspector and supervisor of public offices, each deputy inspector and supervisor, and each state examiner may issue subpoena and compulsory process, direct service thereof by a sheriff or constable, compel the attendance of witnesses and the production of books and papers before him, administer oaths, and punish for disobedience of subpoena, refusal to be sworn, refusal to answer as a witness, or refusal to produce books and papers, as is conferred upon officers authorized to take depositions. Sheriffs and constables shall receive the same fees as for like services in similar cases, and witnesses shall receive the same fees as are allowed in the court of common pleas. The chief inspector and supervisor, and subject to his approval, each deputy inspector and supervisor and each state examiner may employ such experts or other assistants as are necessary to disclose the facts concerning any matter under investigation, and fix their compensation.''

Therefore, it is doubtless the Auditor has capacity to examine the accounts of public offices, along with power to examine necessary books, records, and documents incidental thereto. There is also power to supervise the methods of accounting and verify such procedures of the Tax Commissioner's office. This, however, is subject to the exclusion of the confidentiality of income tax data which is,

by its very nature, personal. It is respectfully submitted that defendant can very handily fulfil his statutory duties without examining the income tax returns of individual taxpayers.

In sum, the General Assembly has enacted the income tax law. The law provides that, unless defendant is charged with the administration and enforcement of such laws, he does not have a right to individual returns. As noted above, privacy statutes must be strictly construed. Therefore, defendant's assignment of error is not well taken and is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH, P. J., concurs.
McCORMAC, J., dissents.

McCORMAC, J., dissenting. I dissent because I believe defendant has stated an official purpose for inspecting state income tax returns. R. C. 5747.18 specifically permits the Tax Commissioner to release confidential income tax returns for official purposes. If the reasoning of the majority opinion is adopted, no one can state an official purpose for the examination of state income tax returns other than employees in the office of the Tax Commissioner. The result would be that the Auditor, who is charged by law with broad powers of audit over all state departments, would be precluded from any effective audit of a substantial part of the operation of the Department of Taxation as it is necessary to check individual income tax returns in order to determine whether a refund voucher is due.

The Auditor of the state is given broad power, under R. C. Chapters 115 and 117, to examine each voucher presented to him and to keep full and accurate accounts of money and other property paid out of or transferred from the state treasury. The Auditor, through the Bureau of Inspection and Supervision of public offices, is required to inspect and supervise the accounts and reports of every state office, which certainly includes the Department of Taxation. Consequently, the Auditor's office serves as a check and balance over the fiscal operation of every state

office and department. However, the majority has held that these broad powers of supervision and control, providing a check and balance to the fiscal integrity of each state department, are eliminated in the case of the Tax Commissioner in that tax returns are confidential. The fact that tax returns are confidential begs the question, as the real question is whether the Auditor states an official purpose in seeking to examine individual tax returns in order to perform broad powers of audit over another state department.

An attempt is made to support the fact that the Auditor does not state an official business by pointing to the Internal Revenue Code, which permits inspection of federal income tax returns by any state official, body or commission lawfully charged with the administration of any state tax law, if the inspection is for the purpose of such administration or for the purpose of obtaining information to be furnished to local taxing authority. However, Internal Revenue Code Section 6103 (d) is the section of the Code dealing with release of otherwise confidential federal income tax returns to another segment of the federal government and is the federal version of "official purposes." That section permits inspection of individual tax returns by committees of Congress—specifically, the House Committee on Ways and Means, the Senate Committee on Finance and the Joint Committee on Internal Revenue Taxation—in order that other parts of the government may conduct their assigned duties. No matter who is furnished federal income tax returns or state income tax returns, that person is charged with protecting the confidentiality of the returns. The other entities in state government who are entitled to otherwise confidential state income tax returns for official purposes are not enumerated in R. C. 5747.18 as in the Internal Revenue Code, and it is necessary to locate them in other provisions of law, such as R. C. Chapters 115 and 117, which set forth the duties of the Auditor, to define what other entities have an official purpose for access to the returns.

As held in Atty. Genl. Op. 75-012, the Auditor of the

state performs a statutory function directly related to the administration of the state income tax. "* * * [A]s Auditor he may inquire into the legality of claims and vouchers submitted to him and must refuse to issue a warrant on the Treasurer of State for such a claim unless he finds it legal. R. C. 115.35. This necessarily includes claims for income tax refunds certified to the Auditor pursuant to R. C. 5747.-11. Furthermore, he is charged with investigating through the Bureau of Inspection and Supervision of Public Offices the accounts of the various state departments and institutions. R. C. 117.01. Where the Department of Taxation is the object of the investigation, the Bureau's function is related to the administration of the state tax law and it may request and receive information relevant to that inquiry."

It is clear then that there are "official purposes" for which the Auditor of state may, pursuant to R. C. 5747.18, request and receive information gained by the Tax Commissioner or his agent. As pointed out in Atty. Gen. Op. 75-012, the Auditor, in requesting income tax records, must state a purpose within its powers. Such a purpose has been stated in the letter of February 26, 1975, from the Auditor to the Tax Commissioner.

Moreover, the fact that R. C. 5747.11 requires the Tax Commissioner to determine the amount of refund and certify that amount to the Auditor does not mean that the Auditor's auditing functions are eliminated and that he must write the refund check without question. Many provisions in state statutes require another state department to certify the amount due by voucher to the Auditor who is not precluded thereby from independently checking the accuracy of the voucher amounts.

Apparently, there is an underlying feeling that the purpose stated by the Auditor may in some way be a subterfuge for improper purposes, such as political purposes, and that the Auditor or his employees will not maintain the confidentiality required of all public officials properly having access to state income tax returns. As we stated in the case of *Maloney et al.* v. *Rhodes,* Franklin County Court of

Appeals No. 75AP-317, unreported, devious conduct on the part of a government official cannot be presumed. A valid purpose for inspection of the state income tax returns has been stated by the Auditor and it must be presumed that the tax returns obtained to enable the Auditor to perform his auditing duties will be properly used. In the event the returns are not properly used, appropriate action can be taken at that time.

In summary, the Auditor is the official watchdog of fiscal integrity over all other departments of government. There is neither intent nor reason to render meaningless or ineffectual the duties of the Auditor as prescribed in R. C. Chapters 115 and 117 as relates to the Department of Taxation by provision that state income tax returns are confidential and not to be released except for official purposes. The Department of Taxation is not a power unto itself, free from outside audit applicable to every other public office. No abuse of confidentiality exists by use of state income tax returns for conducting an official audit, as its employees are charged with the protection of confidentiality as are the employees of the Department of Taxation. The judgment of the trial court should be reversed.