STATE of Iowa, Appellee,

v.

Paul Douglas SCHOMAKER, Appellant.

No. 67854.

Supreme Court of Iowa.

Oct. 19, 1983.

Charles L. Harrington, Appellate Defender, and Faith O'Reilly, Asst. Appellate Defender, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Mary Jane Blink, Asst. Atty. Gen., and Michael L. Zenor, County Atty., for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McCORMICK, LARSON, and SCHULTZ, JJ.

UHLENHOPP, Justice.

This criminal appeal involves questions concerning confidentiality of tax records, the rationality of an inference presented in a jury instruction, and effective assistance of counsel.

The jury could find the following sequence of events occurred. In 1976 a 1975 Cadillac Eldorado automobile was reported stolen from a used car lot in Des Moines, Iowa. On the night of July 19 or 20, 1979, defendant Paul Douglas Schomaker met a man named John at the Alibi Lounge in Spencer, Iowa, and revealed his interest in buying a car and a truck-tractor. John said he had a 1975 model Cadillac Eldorado in Des Moines, Iowa, and that the automobile was for sale. Later that evening, near closing time of the lounge, defendant and John drove to Des Moines to see the Eldorado, which had been stored in a shed for more than a year. According to defendant, he acquired the Eldorado for $2,500 after a test drive. Before the two men parted, John explained that his father-in-law would have a Peterbilt truck-tractor ready for sale in a week or two.

On August 7 or 8, 1979, a new Peterbilt truck-tractor disappeared from the premises of Doonan Trucking Company in Grand Island, Nebraska.

At about the same time, defendant and a Richard Kramer, introduced as John's father-in-law, met at Herbie's Truck Stop in Council Bluffs, Iowa. Again according to defendant, he purchased a Peterbilt for $46,500 at that meeting.

Sometime prior to March 1981, Clay County Sheriff Phil Nelson received an anonymous tip that defendant possessed a Cadillac Eldorado and Peterbilt truck-tractor which were stolen. Investigation led to the discovery that the vehicle identification numbers on both vehicles had been altered. When the correct identification numbers were ascertained, the Eldorado was found

to be the automobile reported missing from the used car lot in Des Moines and the Peterbilt was found to be the truck-tractor missing from Doonan Trucking Company. Defendant never obtained title to either vehicle, despite repeated requests by a truck lessee that he do so as to the truck-tractor. Defendant also forged a bill of sale and several trip permits for the truck, and told his wife that the Eldorado was "hot." His wife testified that the defendant did not have large amounts of money and that he filed for bankruptcy in 1979.

A jury found defendant guilty of two counts of second-degree theft in violation of sections 714.1(4) and 714.2(2) of the Iowa Code (1981). He was also found to be an habitual offender under section 902.8.

I. Prior to trial, the district court granted the county attorney a subpoena duces tecum directing the Iowa Department of Revenue (department) to produce defendant's 1979 and 1980 Iowa income tax returns. The department moved to quash the subpoena, relying on sections 422.20 and 422.72 of the Code and rule 730–38.6(422) of the Iowa Administrative Code. The county attorney resisted the motion to quash, citing rule 5(6) of the rules of criminal procedure.

The trial court overruled the motion to quash, deciding that "[t]he manner in which the defendant reported or did not report said vehicles on his 1979 and 1980 state tax returns would appear to be relevant and material to the prosecution of the alleged crimes...." The department then produced the returns, and the 1979 return was subsequently introduced into evidence.

Defendant unsuccessfully moved in limine and objected at trial to production of the tax returns, and to admission of the 1979 return. In this appeal he asserts that the trial court erred in overruling his motion and objection.

Sections 422.20 and 422.72 of the Iowa Code provide in relevant part:

422.20. It shall be unlawful for any present or former officer or employee of the state to divulge or to make known in any manner whatever not provided by law to any person the amount or source of income, profits, losses, expenditures, or any particular thereof, set forth or disclosed in any income return, or to permit any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law; and it shall be unlawful for any person to print or publish in any manner whatever not provided by law any income return, or any part thereof or source of income, profits, losses, or expenditures appearing in any income return; and any person committing an offense against the foregoing provision shall be guilty of a serious misdemeanor. If the offender is an officer or employee of the state, such person shall also be dismissed from office or discharged from employment. Nothing herein shall prohibit turning over to duly authorized officers of the United States or tax officials of other states state information and income returns pursuant to agreement between the director and the secretary of the treasury of the United States or the secretary's delegate or pursuant to a reciprocal agreement with another state.

422.72. It is unlawful for the director, or any person having an administrative duty under this chapter, or any present or former officer or other employee of the state authorized by the director to examine returns, to divulge in any manner whatever, the business affairs, operations, or information obtained by an investigation under this chapter of records and equipment of any person visited or examined in the discharge of official duty, or the amount or source of income, profits, losses, expenditures or any particular thereof, set forth or disclosed in any return, or to permit any return or copy of a return or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law. However, the director may authorize examination of such state returns and other state information which is confidential under this section, if a

reciprocal arrangement exists, by tax officers of another state or the federal government. The director may, by rules adopted pursuant to chapter 17A, authorize examination of state information and returns by other officers or employees of this state to the extent required by their official duties and responsibilities. Disclosure of state information to tax officers of another state is limited to disclosures which have a tax administrative purpose and only to officers of those states which have laws that are as strict as the laws of this state protecting the confidentiality of returns and information. The director shall place upon the state tax form a notice to the taxpayer that state tax information may be disclosed to tax officials of another state or of the United States for tax administrative purposes. The department shall not authorize the examination of tax information by officers and employees of this state, another state, or of the United States if the officers or employees would otherwise be required to obtain a judicial order to examine the information if it were to be obtained from another source, and if the purpose of the examination is other than for tax administration. However, the director of revenue may provide sample individual income tax information to be used for statistical purposes to the legislative fiscal bureau. The information shall not include the name or mailing address of the taxpayer or the taxpayer's social security number. Any information contained in an individual income tax return which is provided by the director shall only be used as a part of a data base which contains similar information from a number of returns. The legislative fiscal bureau shall not have access to the income tax returns of individuals. Each request for individual income tax information shall contain a statement by the director of the legislative fiscal bureau that the individual income tax information received by the bureau shall be used solely for statistical purposes. This subsection does not prevent the department from authorizing the examination of

state returns and state information under the provisions of section 252B.9. This subsection prevails over any general law of this state relating to public records.

Section 38.6 of the department's regulations implementing these sections states:

Sections 422.20 and 422.72 apply generally to the director, deputies, auditors, agents, present or former officers and employees of the department. Disclosure of information from a taxpayer's filed return or report or other confidential state information by department of revenue personnel to a third person is prohibited under the above sections. Other persons having acquired information disclosed in a taxpayer's filed return or report or other confidential state information, will be bound by the same rules of secrecy under these sections as any member of the department and will be subject to the same penalties for violations as provided by law. See rule 6.3(17A).

This rule is intended to implement Iowa Code sections 422.16 [relating to withholding], 422.20 and 422.72.

The subpoena in this case was authorized by the district court. Defendant contends that sections 422.20 and .72 are directed at both the department personnel and the courts, and that neither the department personnel nor the courts can permit the department's records to be divulged except as "provided by law." The State claims that the sections are administrative in nature, directed at the department personnel, and do not apply to court process.

The federal statutes are more elaborate, and are not of much assistance in resolving the present problem. 26 U.S.C. § 6103(i) (1976 and Supp. V 1981). Statutes in other states, however, give defendant some support. Several of them expressly exempt court orders from confidentiality requirements. Illustrative decisions involving such statutes are *Losavio v. Robb,* 195 Colo. 533, 537, 579 P.2d 1152, 1155 (1978) (exceptions for court orders); *Garrett v. State,* 243 Ga. 322, 324, 253 S.E.2d 741, 743 (1979) ("except by judicial order or as otherwise provided by law"); *New York State Tax Comm'n v.*

*State Organized Crime Task Force,* 89 Misc.2d 275, 277, 391 N.Y.S.2d 329, 329–30 (1977) ("except in accordance with proper judicial order"); *Collins v. Ferguson,* 48 Ohio App.2d 255, 259, 357 N.E.2d 51, 54 (1976) (judicial order is one of two exceptions); *Wisconsin Steel Sheeting & Blasting Co. v. Donlin,* 23 Wis.2d 379, 383, 127 N.W.2d 5, 7 (1964) ("pursuant to a court order"—Wis.Stat.Ann. § 71.11(44)(c)(6) (1969)). *See Annot.,* 1 A.L.R. 4th 959 (1980). The Iowa statute contains no such express provision. On the other hand, the Iowa sections do not contain an express provision prohibiting judicial divulgence. *Contrast Oklahoma Tax Comm'n v. McInnis,* 409 P.2d 355, 356 (Okl.1965) (statute expressly prohibits court production of tax records except in criminal tax cases).

█ Reading sections 422.20 and .72, we are impressed that the aim of the sections appears to be to protect private information of taxpayers from divulgence by the persons who operate the tax department. The sections contain no language that the records are privileged from introduction into evidence. If, for example, a taxpayer retains copies of his tax returns, nothing in the statute makes those copies, or the taxpayer's supporting records, privileged from introduction into evidence. We conclude that tax returns—whether the taxpayer's copies or the originals with the department—stand on no different footing than other relevant records of the taxpayer insofar as production and admission into evidence are concerned.

█ Our reading of the sections finds support in *Iowa Civil Rights Comm'n v. City of Des Moines,* 313 N.W.2d 491 (Iowa 1981), and *Brown v. Johnston,* 328 N.W.2d 510 (Iowa), *cert. denied,* —— U.S. ——, 103 S.Ct. 3540, 77 L.Ed.2d 1390 (1983). The tax returns in this case were highly relevant and we hold that the district court did not err in requiring their production and in admitting the 1979 return into evidence. *See also* 23 Am.Jur.2d *Deposition and Discovery* § 202 (1965); 27 C.J.S. *Discovery* § 72, at 233 (1959); *Annot.,* 70 A.L.R.2d 240, 250–51 (1960).

II. The trial court submitted the following instruction to the jury:

[I]f you find that the State has proved by evidence beyond a reasonable doubt each of the following facts, you may, but are not required to, infer that the defendant knew or believed that the Peterbilt truck-tractor [an otherwise identical instruction substituted "Cadillac automobile" at this point] had been stolen.

1. That both the Peterbilt truck-tractor and Cadillac automobile found in the possession of the defendant were stolen property.

2. That the Peterbilt truck-tractor had been previously stolen from someone and that the Cadillac automobile had been previously stolen from another at a different time.

The language of the instruction is derived from section 714.1(4) of the Code. That section provides:

The fact that the person is found in possession of property which has been stolen from two or more persons on separate occasions, or that the person is a dealer or other person familiar with the value of such property and has acquired it for a consideration which is far below its reasonable value, shall be evidence from which the court or jury may infer that the person knew or believed that the property had been stolen.

Defendant contends that under the facts in this case, the jury could not rationally make a connection between the possession of the vehicles and guilty knowledge, as the instruction permits. As a result, defendant believes the instruction impermissibly shifts the burden of proof and reduces the standard of proof to something less than a reasonable doubt. He states in his brief:

In *State v. Post,* 286 N.W.2d 195 (Iowa 1980), the prosecution's theory was that the defendant was involved in a fencing operation involving motor vehicles. *Id.* at 200. Under those facts, the inference of knowledge based upon the fact that the property was stolen from different victims on separate occasions was reason-

able since a rational connection exists "between the fact that the property was stolen from separate sources and the inferred fact that the *person in possession was more than a casual buyer of such goods and was, in fact, in the business of doing so.*" *Id.* at 203 (emphasis added). In contrast, in this case there was no attempt to prove that Mr. Schomaker was anything but a "casual buyer."

 The instruction in question permits an inference. It leaves the trier of fact free to infer the elemental fact from the basic fact. Such an inference does not shift the burden of proof and does not adversely affect the reasonable doubt standard if, under the facts of the case, the trier could rationally make the connection. *State v. Post,* 286 N.W.2d 195, 203 (Iowa 1980) (quoting *Ulster County Court v. Allen,* 442 U.S. 140, 157, 99 S.Ct. 2213, 2225, 60 L.Ed.2d 777, 792 (1979)). The ultimate fact inferred must "more likely than not" flow from the basic fact. *State v. Rinehart,* 283 N.W.2d 319, 321 (Iowa 1979) (quoting *Allen,* 442 U.S. at 165, 99 S.Ct. at 2228–29, 60 L.Ed.2d at 797), *cert. denied,* 444 U.S. 1088, 100 S.Ct. 1049, 62 L.Ed.2d 775 (1980).

In *Post* we found that the defendant's fencing operation made the connection between the basic fact and the elemental fact "rational." On the present facts could the jury rationally infer that defendant knew or believed that the Cadillac and Peterbilt had been stolen?

 The State invites our attention to the circumstances surrounding the automobile and truck-tractor. Defendant testified how he met "John" in a lounge in Spencer and how he eventually acquired the Cadillac and Peterbilt from John and John's father-in-law. Instead of fencing the Eldorado and the Peterbilt, as the defendant in *Post* would have done, defendant used the vehicles himself. His other actions, however, indicate knowledge or belief that the vehicles were stolen just as fencing indicated that knowledge or belief in *Post.* The vehicle identification numbers on both vehicles were altered. Defendant never obtained title to either vehicle. He forged a bill of sale and several trip permits for the truck-tractor. Defendant's wife testified that defendant had little money and that he referred to the Cadillac as being "hot." Under the record here, we hold the jury could rationally infer that defendant had knowledge or belief that the vehicles had been stolen. We do not decide whether the jury instruction in question would or would not have been appropriate if the sole evidence in the record had been that defendant was found in possession of the two motor vehicles and that they had been stolen from two persons on separate occasions.

III. Defendant argues finally that his trial counsel was incompetent. Our decision on the admissibility of the tax returns removes the predicate for defendant's principal argument of incompetency of counsel. His other grounds are too generalized to be considered and do not present a claim of ineffective assistance of counsel to this court. *State v. White,* 337 N.W.2d 517 (1983).

We find no error.

AFFIRMED.