# IN THE COURT OF APPEALS OF IOWA

No. 13-1199
Filed December 24, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ROBERT DEAN HENDERSON SR.,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Glenn E. Pille, Judge.


        A defendant appeals his three convictions for theft.  **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTION.**


        Mark C. Smith, State Appellate Defender, and Martha J. Lucey, Assistant Appellate Defender, Austin Mowl, Legal Intern, for appellant.

        Thomas J. Miller, Attorney General, Mary A. Triick, Assistant Attorney General, John P. Sarcone, County Attorney, and Olu Salami, Assistant County Attorney, for appellee.


        Heard by Danilson, C.J., and Doyle and Tabor, JJ.

**TABOR, J.**

Robert Henderson appeals three theft convictions for exercising control over tools stolen from three businesses at a construction site in Ankeny. He alleges several instances of ineffective assistance of counsel. The most potent allegation—and the ground upon which we reverse—is his claim concerning the motion for judgment of acquittal. Henderson argues the State's presentation of evidence was flawed because it did not "connect the dots" between the property identified by the theft victims and the evidence seized during execution of a search warrant. He also claims the State failed to prove the value of a stolen drill. Because we agree with Henderson's argument on these two points, we reverse his convictions and remand for judgment entry on a single count of theft in the fifth degree.

## I.     Background Facts and Proceedings

On Monday morning, November 5, 2012, foremen for several construction companies arrived at the Old Dominion work site near the Ankeny airport only to discover someone had broken into their trailers over the weekend and taken tools, equipment, and supplies. The three companies identified as theft victims in this case were Absolute Concrete, Wolin Mechanical, and Tesdell Electric.

Representatives of the three companies testified at Henderson's trial. Kyle Kriegel, superintendent for Absolute Concrete, found numerous items missing from the company's trailer, including a site laser, a digital transit, a manual transit, a Bosch Bulldog hammer drill, and other miscellaneous tools. Absolute Concrete's trailer was burglarized again on November 12, 2012. Most

of the tools missing from Absolute Concrete's trailer were never recovered. Kriegel estimated the value of the laser, transits, and drill at approximately $12,500. Paul Robertson, field supervisor for Wolin, also found items missing from his company's trailer on November 5, specifically tools and new copper pipe. Wolin purchased the pipe from Plumb Supply. Robertson testified the Ankeny police recovered a Hilti DD 130 core drill and a Milwaukee cordless Sawzall that belonged to his company; he estimated their combined value at $1700. John Angaran, the foreman for Tesdell, found the padlock cut on his company's job box on the morning of November 5. Missing items included a Greenlee knockout cutter and a hydraulic hand pump, valued at approximately $1200.

In the wake of the worksite thefts, Ankeny police contacted local scrap metal buyers to be on the lookout for new copper pipes from Plumb Supply bearing a Great Lakes stamp. Two local companies reported buying copper matching that description. Alter Metal bought copper pipes from Racail Brandt on November 8, 2012. American Scrap Company bought copper pipes from Sarah Blaess on November 12, 2012. Both Brandt and Blaess had a connection to Henderson.[1] Henderson is the grandfather of Brandt's son and Blaess has been friends with Henderson for four years, and he had been doing work at her house around that time.

The police investigation of the thefts led to the execution of search warrants at the residences of Brandt and Blaess on November 15, 2012. At

---

[1] The State offered evidence Henderson used the women's identifications to sell the copper piping to the scrap metal businesses.

Brandt's home, police recovered a DeWalt drill, which she had borrowed from Henderson. The drill was documented as being stolen from Wolin. During the search at Blaess's residence, police located several tool cases in the garage. Blaess testified Henderson had access to her garage and had pulled his truck up to the garage between November 8 and November 15, 2012. Henderson admitted unloading items into Blaess's garage during a telephone conversation in April 2013.

On January 15, 2013, the State charged Henderson with one count of first-degree theft and three counts of second-degree theft. On June 12, 2012, the morning of trial, the State filed an amended trial information alleging three counts: (I) first-degree theft for exercising control over property stolen from Absolute Concrete, in violation of Iowa Code sections 714.1(4) and 714.2(1) (2011); (II) second-degree theft for exercising control over property stolen from Wolin, in violation of sections 714.1(4) and 714.2(2); and (III) second-degree theft for exercising control over property stolen from Tesdell, in violation of sections 714.1(4) and 714.2(2). The State also added the allegation Henderson was a habitual offender under Iowa Code section 902.8.

A jury heard eight witnesses for the State and two witnesses for the defense before returning guilty verdicts on June 14, 2012. The court sentenced Henderson to concurrent fifteen-year terms[2] on counts II and III to run consecutive to another fifteen-year term for count I, for a total of thirty years. The court also ran the new sentences consecutive to Henderson's parole revocation.

---

[2] Henderson stipulated to his prior felony convictions for the purpose of determining his habitual offender status.

The court imposed the minimum fine, but suspended it due to Henderson's incarceration.[3] Henderson now appeals.

## II.     Issues Depending on Single Larceny Rule

Henderson invokes the "single-larceny rule" in arguing counsel was ineffective for failing to object to the marshalling instructions for the three theft counts and for failing to seek a special interrogatory regarding the number of thefts.   Henderson returns to that common law rule to argue imposition of sentence on all three theft counts violated double jeopardy.  We cannot reach the merits of Henderson's claims in either of these contexts because we are bound by the precedent of our supreme court.

Before the legislature adopted the current criminal code, Iowa courts recognized a single-larceny rule.  *See State v. Copenhaver*, 844 N.W.2d 442, 451 n.2 (Iowa 2014).  Under that rule, the taking of property belonging to two different people at the same place and time constituted one single larceny. *State v. Sampson*, 138 N.W. 473, 475 (Iowa 1912).

Henderson wishes to apply the single-larceny rule to his three theft offenses for exercising control over stolen property.  His argument is thwarted by existing precedent.  *See State v. Schmitz*, 610 N.W.2d 514, 517-18 (Iowa 2000) (holding defendant could be prosecuted for multiple counts of possession of stolen property as long as the evidence supported a conviction on each count).  Henderson recognized this impediment and asked the Iowa Supreme Court to retain this appeal.  Because the supreme court transferred this appeal

---

[3] Because we reverse Henderson's felony convictions, we do not need to address his claim the fine was illegal.

to our court, Henderson's claims that depend on overruling *Schmitz* must fail. *See State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990) (explaining court of appeals is not at liberty to overturn supreme court precedent).

**III.    Analysis of Henderson's Remaining Claims Against Counsel**

We review claims of ineffective assistance de novo because they involve the constitutional right to counsel. *State v. Showens*, 845 N.W.2d 436, 440 (Iowa 2014). To prevail on his claims of ineffective assistance of counsel, Henderson must prove (1) counsel failed to perform an essential duty and (2) prejudice resulted. *See State v. Ross*, 845 N.W.2d 692, 697–98 (Iowa 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

Under the first prong, Henderson must show a deficiency in counsel's performance. *Strickland*, 466 U.S. at 687. We presume counsel was competent and Henderson carries the burden to show, by a preponderance of the evidence, that counsel's performance included "such serious errors" that he was "not functioning as the advocate the Sixth Amendment guarantees." *See Ross*, 845 N.W.2d at 698. The burden is not satisfied by a showing counsel's trial strategy backfired or another attorney would have tried the case differently. *Id.*

Under the second prong, Henderson must show counsel's deficient performance prejudiced the defense. *See id.* This prejudice prong requires proof by a reasonable probability the result of the proceeding would have differed but for counsel's errors. *See Strickland,* 466 U.S. at 687, 694. We will resolve ineffective-assistance-of-counsel claims on direct appeal only when the record is

adequate; otherwise, we will preserve them for resolution in a postconviction-relief action. *Ross*, 845 N.W.2d at 697.

We analyze three claims of ineffective assistance raised by Henderson. First, we consider whether counsel had an obligation to object under Iowa Rules of Evidence 5.403 or 5.404(b) to testimony describing Henderson's acts of selling copper pipe as scrap metal. Second, we address counsel's handling of the jury instruction conveying the knowledge inference from Iowa Code section 714.1(4) based on the possession of property stolen from two or more persons at different times. Third, we examine counsel's strategy regarding the motion for judgment of acquittal.

### A. Should counsel have objected to evidence of Henderson's scrapping of new copper pipe?

The State offered evidence Henderson "scrapped" copper pipe stolen from the construction site. On appeal, he alleges his attorney should have argued that evidence was inadmissible under rules 5.403 and 5.404(b). The record suggests Henderson was separately charged with simple misdemeanor theft for selling the copper pipe and the State dismissed those charges after the jury's guilty verdicts on the felony theft offenses.

Evidence of crimes, wrongs, or acts other than those charged "is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." Iowa R. Evid. 5.404(b). But such evidence may be admissible for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Iowa R. Evid. 5.403.

Henderson argues the State's evidence he "scrapped copper alleged to be stolen" unfairly suggested to the jury he acted in conformity with his criminal behavior when he possessed other stolen items. The State counters that the evidence of Henderson's involvement in copper scrapping was inextricably intertwined with the charged felony offenses.

Our supreme court has recognized the doctrine of inextricably intertwined evidence, but has applied it narrowly when the evidence is being offered to complete the story of the crime charged. *See State v. Nelson*, 791 N.W.2d 414, 423 (Iowa 2010). In this case, we agree with the State that testimony concerning Henderson's involvement in selling new copper pipe for scrap metal was admissible under the inextricably intertwined doctrine because it was directly probative of the charged theft offenses and arose from the same transactions. Wolin reported copper pipe missing from the construction site and police officers followed leads regarding scrap metal customers to obtain their search warrants. Accordingly, we find no basis for counsel to have objected to the admissibility of the other bad acts evidence.

**B. Should counsel have objected to the stock jury instruction regarding the statutory inference of knowledge from possession of property stolen from two or more victims on separate occasions?**

The Iowa legislature has determined a fact finder may infer a person knew or believed property found in his possession was stolen if the evidence established the property was taken from two or more persons on separate

occasions. Iowa Code § 714.1(4); *see State v. Knapp*, 426 N.W.2d 169, 172–173 (Iowa Ct. App. 1988). The uniform jury instruction committee sponsored by the Iowa State Bar Association developed Iowa Criminal Jury Instruction No. 1400.15 to convey that statutory inference in plain language. The district court provided the inference instruction to the jurors considering Henderson's case. We are reluctant to disapprove of uniform jury instructions. *State v. Weaver*, 405 N.W.2d 852, 855 (Iowa 1987).

The instruction read as follows:

> If the State has proved each of the following facts, then you may conclude the defendant knew or believed the property had been stolen:
> 1. The property found in the defendant's possession was stolen property.
> 2. The property was previously stolen from two or more persons at different times.

Henderson faults counsel for not objecting to this instruction. On appeal he outlines three grounds for an objection. First, Henderson claims giving the instruction was improper because the facts proved "mere possession." Second, he alleges the instruction allowed him to be convicted on proof of less than beyond a reasonable doubt. And third, he claims the inference instruction violated his right to due process. Initially, we note counsel *did* object to the inference instruction in the district court, urging an insufficient factual basis for its submission. Counsel stated: "it just doesn't seem to make sense for this particular set of facts." Accordingly, we consider Henderson's foundational objection to the instruction as preserved error.

Henderson's counsel did not have a material duty to challenge the instruction as lessening the State's burden of proof. Our supreme court has rejected that claim. *State v. Schomaker*, 338 N.W.2d 874, 878–79 (Iowa 1983).

> The instruction in question permits an inference. It leaves the trier of fact free to infer the elemental fact from the basic fact. Such an inference does not shift the burden of proof and does not adversely affect the reasonable doubt standard if, under the facts of the case, the trier could rationally make the connection.

*Id.* Moreover, counsel was not required to object to the inference instruction on due process grounds. The court instructed the jury that the State must prove the facts underlying the permissible inference, and that the State's burden of proof was beyond a reasonable doubt. The jury instructions read together accurately conveyed the State's burden.

Finally, we do not believe giving the inference instruction had a prejudicial impact on the misdemeanor theft conviction remaining after our reversal of the felony convictions on sufficiency grounds in the following division of this opinion. In *Schomaker*, the court declined to decide "whether the jury instruction in question would or would not have been appropriate if the sole evidence in the record had been that defendant was found in possession" of property stolen from two persons on separate occasions because the record included other evidence from which the jury could have rationally inferred defendant knew the property was stolen. *Id*. at 879. The same is true here. The jury could have rationally inferred from Henderson's use of Brandt's identification to sell the new copper pipes taken from Wolin's work trailer that he had knowledge or belief the drill he loaned to her was also stolen property.

**C. Did counsel overlook a viable basis to support the motion for judgment of acquittal?**

To prove Henderson committed theft under section 714.1(4), the State was required to prove he exercised control over property, the property was stolen, and at that time, he knew the property had been stolen or had reasonable cause to believe that such property had been stolen. The degree of theft depends on the State proving the value of the stolen property. *See* Iowa Code § 714.2.

To preserve error on a sufficiency challenge, trial counsel is required to make a specific objection in his motion for judgment of acquittal. *Ross*, 845 N.W.2d at 700. On appeal, Henderson contests the State's proof he possessed property taken from Absolute Concrete and Tesdell Electric. He also challenges the State's evidence concerning the value of a drill taken from Wolin Mechanical and possessed by Brandt. Counsel did not assert either of these challenges in the district court. Consequently, Henderson raises these issues as ineffective assistance of counsel.

At trial, defense counsel concentrated on the State's proof he knew the property was stolen. Counsel moved for judgment of acquittal as follows:

> There's no question that for each of the Counts I, II and III, the property belonging to the various construction companies, Absolute Concrete, Wolin Mechanical and Tesdell Electric was stolen. That's pretty much not disputed that items were stolen; also not disputed that my client exercised control over the property in question.
> But the real question is and which we're disputing is that my client had knowledge that the property was stolen at the time that the items were put into the garage of Sara Blaess. So for that reason, we dispute that my client had knowledge that the property was stolen, that being a conscious awareness, according to the

definition of knowledge, a conscious awareness that the property was stolen when it was put into the garage.

We must decide if counsel followed a reasonable strategy in challenging only the knowledge element, or if counsel breached an essential duty by not challenging the State's proof he had control or possession of the stolen tools identified by the theft victims. While improvident trial strategy does not necessarily amount to ineffective assistance, the fact a particular decision was made for tactical reasons also does not immunize it from a Sixth Amendment challenge. *State v. Ondayog*, 722 N.W.2d 778, 786 (Iowa 2006).

Henderson's appellate argument is a technical, yet persuasive, attack on the State's evidence. At trial, construction company representatives reviewed eight photographic exhibits and identified a total of seven items[4] that were missing following the Old Dominion site break-ins. They testified to recovering the stolen items from the Ankeny Police Department. On appeal, Henderson argues the fact that these witnesses identified specific property retrieved from the police department is insufficient to show that he possessed that stolen property.

In her testimony, Blaess identified a photograph depicting the inside of her garage, taken after the execution of the search warrant. At the prosecutor's behest, she placed X's on seven tool boxes shown in the photograph that did not belong to her. She did not testify regarding the content of the boxes.

The State also called Ankeny police detective Nathan Lampe, who testified that "a lot of those items" identified by the company representatives were found in Blaess's garage. He testified "several pictures" were taken. The

---

[4] The hydraulic pump taken from Tesdell appeared in two photographic exhibits.

prosecutor then asked the detective: "And if I tell you a lot of those, just to move things along, a lot of those pictures have been entered into an exhibit, would you have any reason to disagree with me?" Lampe replied: "No."

On appeal, the State recognizes there was no direct testimony from Detective Lampe stating the tools depicted in the photographic exhibits admitted during the testimony of the theft victims were located inside the closed boxes shown in the interior garage photograph marked by Blaess. But the State contends it offered "strong circumstantial evidence" from which the jury could have deciphered a "foundational link" between the evidence that Henderson possessed property moved into Blaess's garage and the evidence the same property was stolen from the construction companies. The State asserts the open boxes depicted in the seven photographic exhibits were "visually consistent" with the closed boxes depicted in the photograph of the interior of Blaess's garage.

As a back-up argument, the State contends even if we find the evidence insufficient to prove Henderson's possession, he cannot show prejudice from counsel's performance. The State argues if counsel had moved for judgment of acquittal on the possession ground, the trial prosecutor would have moved to re-open the record to ask the detective one additional question to establish the connection between the photographic exhibits.

The State must prove every fact necessary to constitute the crime beyond a reasonable doubt. *State v. Kemp*, 688 N.W.2d 785, 789 (Iowa 2004). The evidence presented must raise a fair inference of guilt; it is not enough to create

speculation, suspicion or conjecture. *Id.* Detective Lampe's general testimony cited by the State was not sufficient to satisfy the State's burden to prove beyond a reasonable doubt that the items identified as stolen from the construction site were found inside the closed tool boxes in Blaess's garage. Following the State's case-in-chief, a fact finder would have been left to speculate which, if any, of the stolen tools had been unloaded by Henderson into the garage and later discovered during the police search. If trial counsel had moved for judgment of acquittal alleging inadequate proof of possession, the district court would have granted the motion. Therefore, Henderson's counsel was ineffective as a matter of law.[5] *See State v. Brubaker*, 805 N.W.2d 164, 174 (Iowa 2011).

As Henderson points out on appeal, the only stolen tool linked to him by Detective Lampe's testimony was the DeWalt drill taken from Wolin. But the State did not present any evidence proving the value of that drill. Accordingly, Henderson can only be convicted of theft in the fifth degree. *See* Iowa Code § 714.2(5).

In sum, we determine counsel provided ineffective assistance by overlooking a fatal flaw in the State's case when moving for judgment of acquittal. Therefore, we reverse Henderson's convictions and remand for

---

[5] We are not persuaded by the State's argument that it could have successfully moved to re-open the record to ask the detective questions necessary to connect the dots. Even if the court would have allowed a reopening, we don't know how the detective would have testified.

dismissal of counts I and III, and for entry of judgment on one count of theft in the fifth degree on count II.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTION.**